UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

STANLEY HARDEE,

                                             Plaintiff,


v.                                                              9:23-cv-1142
                                                               (LEK/TWD)


CORRECTIONAL OFFICER J. THOMAS, et al.,
                                          Defendants.
_____

APPEARANCES:                                    OF COUNSEL:

STANLEY HARDEE
*Plaintiff, pro se*
13-A-0433
Otisville Correctional Facility
Box 8
Otisville, NY 10963

NEW YORK STATE ATTORNEY GENERAL              OLIVIA R. COX, ESQ.
Attorneys for Defendants
NYS Office of The Attorney General
The Capitol
Albany, NY 12224

**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

<u>**REPORT-RECOMMENDATION AND ORDER**</u>

## I.    INTRODUCTION

This matter has been referred for a report and recommendation by the Honorable

Lawrence E. Kahn, Senior United States District Judge, pursuant to 28 U.S.C. § 636(b) and

Local Rule 72.3(c).  Plaintiff Stanley Hardee ("Plaintiff"), an incarcerated individual in the

custody of the New York State Department of Corrections and Community Supervision

("DOCCS"), commenced this action pursuant to 42 U.S.C. § 1983 alleging, while he was

incarcerated at Eastern Correctional Facility ("Eastern CF"), Defendants Correctional Officer Jeffrey Thomas, John Doe #1, and John Doe #2, violated his Eighth Amendment Rights. *See generally*, Dkt. No. 1.[1]  Currently before the Court is Defendant Thomas' motion for summary judgment. Dkt. No. 22.  For the reasons set forth below, the undersigned recommends Defendant Thomas' motion be denied without prejudice.

## II.    BACKGROUND

Plaintiff commenced this action by filing his complaint, along with an application to proceed *in forma pauperis* ("IFP"), with the U.S. District Court for the Southern District of New York on August 30, 2023.  *See* Dkt. Nos. 1, 3.  On August 31, 2023, the Hon. Laura Taylor Swain, Chief United States District Judge, transferred the action to this District.  *See* Dkt. No. 4. By Order dated November 27, 2023, Judge Kahn granted Plaintiff's IFP application and found Plaintiff's: (1) "Eighth Amendment excessive force and failure-to-intervene claims against Defendants Thomas, John Doe #1, and John Doe #2," and (2) "medical indifference claims against Defendants Thomas, John Doe #1, and John Doe #2," arising from an incident occurring on November 4, 2022, were sufficient to survive initial review.  Dkt. No. 9 at 13.

Counsel subsequently appeared on behalf of Defendant Thomas.  Dkt. No. 19.  On May 31, 2024, Defendant Thomas filed a motion for summary judgment, alleging Plaintiff failed to exhaust his administrative remedies before commencing this action.  *See generally*, Dkt. No. 22. Defendant asserted Plaintiff: (1) was housed at Eastern CF from before the November 4, 2022, incident, "until November 28, 2022;" (2) "did not file any facility-level grievances at Eastern

---

[1] Citations to the parties' submissions will refer to the pagination generated by CM/ECF, the Court's electronic filing system.  Unless otherwise indicated, excerpts from the record are reproduced exactly as they appear in the original and errors in spelling, punctuation, and grammar have not been corrected.

between the time period of November and December of 2022;" and (3) "*did not file any grievances related to claims in this action against Defendant Thomas*."  Dkt. No. 22-1 at 2 (emphasis added).

On June 27, 2024, Plaintiff filed his response in opposition to Defendant Thomas' motion.  *See generally*, Dkt. No. 28.  In his sworn affidavit included therein, Plaintiff asserted, following the November 4, 2022, incident, he "woke up in Eastern CF's Infirmary" and "asked for grievance forms multiple times, and did not receive any."  *Id*. at 17-18.  Once he was able to obtain a pen and paper, Plaintiff "wrote out a grievance on plain paper, because staff refused to give me a grievance form" and "handed the grievance to a correction officer, within 7 days of the incident."  *Id*. at 18.  Plaintiff was moved from Eastern CF to Adirondack Correctional Facility ("Adirondack CF") on November 28, 2022, and,

> While at Adirondack CF, I asked multiple staff members about my pending grievance complaining about being assaulted by DOCCS staff.  I was told that no grievance was pending.  I was directed to write a new grievance at Adirondack CF.  I wrote a new grievance, gave it to a correction officer, and within a few days a Sergeant interviewed me about my assault complaint.

*Id*.  The Superintendent subsequently issued a decision on Plaintiff's grievance and provided him "2 original appeal forms to fill out.  Which I did.  I put 1 original copy of the appeal in the mailbox, and saved an original copy for myself."  *Id*. at 18-19.

Plaintiff included the copy of the appeal form he saved as an exhibit in his response.  *See id*. at 20.  The attached document contains a grievance number of "ADK-0091-22," filed "12/7/2022," and states, in part, "the grievant's allegations are unsubstantiated and there is no evidence of staff malfeasance."  *Id*.  The grievance response document appears to have been signed by the facility's Superintendent and dated "01/03/2023."  *Id*.  In the portion of the form designated "appeal statement," it appears Plaintiff printed "I wish to Appeal the Decision,"

signed the document, and indicated a date of "12/8/2022." *Id*. Plaintiff further affirmed he

"waited over 8 months for C.O.R.C. to make a final decision on my grievance,"[2] but ultimately

did not receive a decision prior to commencing this action. *Id*. at 19.

Defendant Thomas submitted a reply on July 8, 2024. *See generally*, Dkt. No. 31. In the

letter in further support of his motion for summary judgment, the Defendant avers, "[w]hile it is

true that Plaintiff filed a grievance at Adirondack after the twenty-one days to file a grievance

expired, it was only accepted because Plaintiff told Adirondack's IGPS that he attempted to file

the grievance at Eastern, but was unsuccessful."[3] *Id*. at 1. Defendant asserts "Adirondack's

Superintendent issued a response on January 3, 2023 . . . . [and,] Plaintiff did not appeal the

response, despite his claim that he did." *Id*. at 2. The Defendant further argues "Plaintiff's

purported 'appeal,' submitted as Exhibit 2 in his opposition papers, is dated December 8, 2022 –

the day after the grievance was filed, and approximately one month *before* the Superintendent's

response that was purportedly appealed was issued," therefore, "the Court should disregard

Plaintiff's claim that he appealed his grievance to CORC, and that his administrative remedies

were unavailable to him." *Id*. (emphasis in original, citation omitted).

The Defendant also submitted with his reply a declaration from Erin Kulzer, who began

serving as Acting Incarcerated Grievance Program Supervisor at Adirondack Correctional

Facility in June of 2023. *See generally*, Dkt. No. 31-1. Kulzer affirmed "a review of the records

maintained in the regular course of business by DOCCS indicates that, on December 7, 2022,

Plaintiff filed a grievance related to his claims in this action at Adirondack," which was assigned

"grievance number ADK-0091-22," and "processed as normal." *Id*. at 3. "A copy of the

---

[2] "C.O.R.C." appears to refer to the Central Office Review Committee.
[3] "IGPS" refers to the Incarcerated Grievance Program Supervisor. *See* Dkt. No. 31 at 1.

grievance packet" was included in Kulzer's declaration.  *See id.* at 6-21.  Kulzer asserts "[f]ollowing the completion of the investigation, the Superintendent's office issued a response to Plaintiff's grievance on January 3, 2023," which was "mailed to Plaintiff at Clinton Correctional Facility," where he was housed as of that date.  *Id.* at 3.  Kulzer states, by the language contained on the appeal form, "Plaintiff was advised that he needed to return the executed appeal statement to Adirondack, the facility where the grievance was filed.  Had he done so, a copy of the appeal statement would have appeared in our records.  It does not."  *Id.* at 4.  Therefore, "[b]ased upon my review of the file, Plaintiff did not appeal a facility-level grievance determination to CORC related to any of the above-mentioned issues connected to the claims in this action."  *Id.*

## III.    LEGAL STANDARD

### A.  Summary Judgment

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is warranted if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250-52 (1986).  The moving party bears the initial burden of demonstrating "the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Salahuddin v. Gourd*, 467 F.3d 263, 272-73 (2d Cir. 2006).  A fact is "material" if it "might affect the outcome of the suit under the governing law," and is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson*, 477 U.S. at 248; *see Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005).  The movant may meet this burden by showing the nonmoving party has "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex*, 477 U.S. at 322.

If the moving party satisfies its burden, the nonmoving party must move forward with specific facts showing there is a genuine issue for trial. *Salahuddin*, 467 F.3d at 273. In that context, the nonmoving party must do more than "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "Conclusory allegations, conjecture and speculation . . . are insufficient to create a genuine issue of fact." *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998).

The Second Circuit instructs that on summary judgment motions, "'[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could *reasonably* find for the plaintiff.'" *Jeffreys*, 426 F.3d at 554 (alteration and emphasis in original) (quoting *Anderson*, 477 U.S. at 252). In other words, "a nonmoving party must offer some hard evidence showing that [his] version of the events is not wholly fanciful." *Id.* (citation and internal quotation marks omitted). Accordingly, statements "that are devoid of any specifics, but replete with conclusions, are insufficient to defeat a properly supported motion for summary judgment." *Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 452 (2d Cir. 1999).

In determining whether a genuine issue of material fact exists, the court must resolve all ambiguities and draw all reasonable inferences against the moving party. *Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 309 (2d Cir. 2008). Where a party is proceeding *pro se*, the court is obligated to "read [the *pro se* party's] supporting papers liberally, and . . . interpret them to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994). However, that status "does not relieve [a *pro se*] plaintiff of his duty to meet the requirements necessary to defeat a motion for summary judgment." *Jorgensen*

*v. Epic/Sony Records*, 351 F.3d 46, 50 (2d Cir. 2003) (internal quotation marks and citation omitted).

In applying the summary judgment standard, the district court should not weigh evidence or assess the credibility of witnesses. *Hayes v. New York City Dep't of Corr.*, 84 F.3d 614, 619 (2d Cir. 1996); *Rule v. Brine, Inc.*, 85 F.3d 1002, 1011 (2d Cir. 1996) ("Assessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment.").

### B. Exhaustion of Administrative Remedies

Under the Prison Litigation Reform Act ("PLRA"), "[n]o action shall be brought with respect to prison conditions under section 1983 . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "Whether the plaintiff has exhausted his administrative remedies is a question of law . . . . Thus, an inmate's failure to exhaust administrative remedies is properly considered on a motion for summary judgment in lieu of an answer." *Jenkins v. Short*, No. 9:19-CV-1352 (GTS/TWD), 2020 WL 9264842, at *5 (N.D.N.Y. Nov. 17, 2020) (citing *Snider v. Melindez*, 199 F.3d 108, 113-14 (2d Cir. 1999)) (additional citations omitted), *report and recommendation adopted*, 2021 WL 958512 (N.D.N.Y. Mar. 15, 2021).

The Supreme Court has held "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). Inmates must exhaust their administrative remedies even if they are seeking only money damages that are not available in prison administrative proceedings. *See Giano v. Goord*, 380 F.3d 670, 675 (2d Cir. 2004), *abrogated on other grounds*, *Ross v. Blake*, 578 U.S. 632 (2016).

Furthermore, "the PLRA exhaustion requirement requires proper exhaustion." *Woodford v. Ngo*, 548 U.S. 81, 93 (2006). In order to properly exhaust his administrative remedies, an inmate must complete the administrative review process in accordance with the applicable state rules. *Jones v. Bock*, 549 U.S. 199, 218-19 (2007) (citing *Woodford*, 548 U.S. at 81).

DOCCS has a well-established Inmate Grievance Program ("IGP"), set forth in 7 N.Y.C.R.R. § 701 *et seq*.

> Generally, the DOCCS IGP involves the following procedure for the filing of grievances. First, an inmate must file a complaint with the facility's IGP clerk within twenty-one calendar days of the alleged occurrence. [7 N.Y.C.R.R.] § 701.5(a). A representative of the facility's Inmate Grievance Resolution Committee ("IGRC") has sixteen calendar days from receipt of the grievance to informally resolve the issue. *Id*. § 701.5(b)(1). If there is no such informal resolution, the full IGRC conducts a hearing within sixteen calendar days of receipt of the grievance and issues a written decision within two working days of the conclusion of the hearing. *Id*. §§ 701.5(b)(2), (3). Second, a grievant may appeal the IGRC decision to the facility's superintendent within seven calendar days of receipt of the IGRC's written decision. *Id*. § 701.5(c)(1). If the grievance involves an institutional issue (as opposed to a DOCCS-wide policy issue), the superintendent must issue a written decision within twenty calendar days of receipt of the grievant's appeal. *Id*. § 701.5(c)(3)(ii). Grievances regarding DOCCS-wide policy issues are forwarded directly to the central office review committee ("CORC") for a decision under the process applicable to the third step. *Id*. § 701.5(c)(3)(i). Third, a grievant may appeal to CORC within seven working days of receipt of the superintendent's written decision. *Id*. § 701.5(d)(1)(i). CORC is to render a written decision within thirty calendar days of receipt of the appeal. *Id*. § 701.5(d)(3)(ii).

*Hudson v. Kirkey*, No. 9:20-CV-00581 (LEK/DJS), 2023 WL 2324988, at *3 (N.D.N.Y. Mar. 2, 2023) (additional citation omitted); *see also Torres v. Carry*, 672 F. Supp. 2d 338, 344 (S.D.N.Y. 2009) (explaining exhaustion of the grievance procedure only occurs *after* CORC has rendered its decision).

While the PLRA mandates exhaustion of administrative remedies, it also "contains its own, textual exception to mandatory exhaustion." *Ross*, 578 U.S. at 642. Specifically, the exhaustion requirement contained in § 1997e(a) "hinges on the 'availability' of administrative remedies: An inmate, that is, must exhaust available remedies, but need not exhaust unavailable ones." *Id*. (citing 42 U.S.C. § 1997e(a)) (alterations in original). In *Ross*, the Supreme Court identified three circumstances in which a court may find administrative remedies are not "available" for PLRA purposes, holding:

> [A]n administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates . . . . Next, an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use . . . . And finally, . . . when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation.

*Id*. at 643-44. In these situations, exhaustion is not required. Additionally, the Second Circuit has observed "the three circumstances discussed in *Ross* do not appear to be exhaustive . . . ." *Williams v. Correction Officer Priatno*, 829 F.3d 118, 124 n.2 (2d Cir. 2016).

## IV.    ANALYSIS

"Only in the rarest of cases may summary judgment be granted against a plaintiff who has not been afforded the opportunity to conduct discovery." *Hellstrom v. U.S. Dep't of Veterans Affs.*, 201 F.3d 94, 97 (2d Cir. 2000) (citations omitted). Here, the record is, at best, incomplete as to the availability of administrative remedies at the various DOCCS facilities where Plaintiff was housed following the alleged Eastern CF incident. Because this record "could be made clearer following full discovery . . . denial of the Motion at this time is appropriate." *Smith v. Jaynes*, No. 9:18-CV-1107 (DNH/DJS), 2020 WL 1149856, at *4

(N.D.N.Y. Feb. 4, 2020), *report and recommendation adopted*, 2020 WL 1140665 (N.D.N.Y. Mar. 9, 2020).

Plaintiff's assertions regarding his attempts to submit both his initial grievance and the appeal of the Adirondack CF Superintendent's denial of his alleged second grievance present distinct questions of fact that should not be resolved at this juncture. *See, e.g.*, *Tillman v. Phillips*, No. 9:19-CV-1597 (LEK/CFH), 2021 WL 5233308, at *9 (N.D.N.Y. Nov. 10, 2021) (explaining, even "[w]here a defendant correctly notes that a plaintiff's versions of events are not completely consistent, this Court, at the summary judgment stage, will not weigh in on the factual dispute or make credibility determinations . . . . Therefore, as the exhaustion determination hinges on the question of plaintiff's credibility . . . summary judgment is not warranted . . . .") (internal quotations and citations omitted), *report and recommendation adopted*, 2021 WL 5768393 (N.D.N.Y. Dec. 6, 2021). "While the Court has the ability to order an exhaustion hearing, . . . doing so here without the benefit of discovery would not be the most efficient manner in which to resolve the factual disputes presented here." *Croney v. Medbury*, No. 9:23-CV-1449 (DNH/DJS), 2024 WL 5294279, at *4 (N.D.N.Y. Nov. 12, 2024) (citing *Messa v. Goord*, 652 F.3d 305, 309 (2d Cir. 2011)), *report and recommendation adopted*, 2024 WL 4986160 (N.D.N.Y. Dec. 5, 2024); *see also, e.g.*, *Smith*, 2020 WL 1149856, at *4.

Accordingly, the undersigned recommends Defendant Thomas' motion be denied as premature. *See, e.g.*, *Smith*, 2020 WL 1149856, at *4; *Croney*, 2024 WL 5294279, at *4.

## V.    CONCLUSION

After carefully reviewing the record, the parties' submissions, and the applicable law, and for the reasons stated herein, it is hereby

**RECOMMENDED** that Defendant Thomas' motion for summary judgment (Dkt. No. 22) be **DENIED** without prejudice to renew after discovery has been conducted; and it is further

**ORDERED** that the Clerk provide to Plaintiff a copy of this Report-Recommendation and Order, along with copies of the unpublished decisions cited herein in accordance with the Second Circuit decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within which to file written objections to the foregoing report.[4]  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**.  *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

**IT IS SO ORDERED.**

Dated: February 13, 2025
        Syracuse, New York

Thérèse Wiley Dancks
United States Magistrate Judge

---

[4] If you are proceeding *pro se* and are served with this Report-Recommendation and Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Report-Recommendation and Order was mailed to you to serve and file objections.  Fed. R. Civ. P. 6(d).  If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday.  Fed. R. Civ. P. 6(a)(1)(C).

Jenkins v. Short, Not Reported in Fed. Supp. (2020)

2020 WL 9264842

2020 WL 9264842

Only the Westlaw citation is currently available.

United States District Court, N.D. New York.

Darell JENKINS, Plaintiff,

v.

Sergeant SHORT, et al., Defendants.

9:19-cv-01352 (GTS/TWD)

|

Signed 11/16/2020

|

Filed 11/17/2020

**Attorneys and Law Firms**

DARELL JENKINS, Plaintiff, pro se, 18-A-0025, Southport Correctional Facility, PO Box 2000, Pine City, NY 14871.

OF COUNSEL: LAUREN ROSE EVERSLY, ESQ., Assistant Attorney General, HON. LETITIA JAMES, Attorney General for the State of New York, Attorney for Defendants, The Capitol, Albany, NY 12224.

**ORDER AND REPORT-RECOMMENDATION**

THÉRÈSE WILEY DANCKS, United States Magistrate Judge

**I. INTRODUCTION**

 **\*1**  This matter was referred for a Report and Recommendation by the Honorable Glenn T. Suddaby, Chief U.S. District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(c). Plaintiff Darell Jenkins, an inmate in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS"), commenced this *pro se* civil action under 42 U.S.C. § 1983, asserting claims arising out of his incarceration at Mid-State Correctional Facility ("Mid-State"). (Dkt. No. 1.) The suit was originally filed in the United States District Court for the Western District of New York ("W.D.N.Y."), but was later transferred to this District. (Dkt. No. 6.) The District Court reviewed the complaint in accordance with 28 U.S.C. § 1915, and found only Plaintiff's First Amendment free exercise claims against Defendants Correctional Officer ("C.O.") Lindermayer, Sergeant ("Sgt.") Short, and C.O. O'Neil survived initial review and required a response. (Dkt. No. 10.)

Defendants now move for summary judgment, in lieu of an answer, pursuant to Rule 56 of the Federal Rules of Civil Procedure arguing Plaintiff failed to exhaust his administrative remedies prior to commencing this action. (Dkt. No. 21.) Plaintiff has not responded to Defendants' motion and the time to do so has expired. (*See* Dkt. Nos. 25, 26, 27, 28.) For the reasons set forth below, the Court recommends that Defendants' motion be granted.

**II. BACKGROUND**

Plaintiff alleges that on September 1, 2019, at approximately 9:30AM, while Defendants were inside his cell, C.O. Lindermayer "kneeled down on the floor above [Plaintiff's] altar of Santeria, & threw [his] offerings & water away[.] (Dkt. No. 1 at 5.[1]) C.O. O'Neil then described Plaintiff's religion as "voodoo." *Id.* C.O. Lindermayer, Sgt. Short, and C.O. O'Neil told Plaintiff he was not permitted to offer "any food to [his] saints on [his] altar" and that he was not permitted to have frankincense oils. *Id.*

Jenkins v. Short, Not Reported in Fed. Supp. (2020)

Case 9:23-cv-01142-LEK-TWD    Document 35    Filed 02/13/25    Page 13 of 54

2020 WL 9264842

1    Page references to documents identified by docket number are to the page numbers assigned by the CM/ECF docketing system maintained by the Clerk's Office. Paragraph numbers are used where documents identified by the CM/ECF docket number contain consecutively numbered paragraphs. Unless noted, excerpts from the record are reproduced exactly as they appear in the original and errors in spelling, punctuation, and grammar have not been corrected.

Plaintiff filed a grievance but the grievance officer "Tapia" [2] "never answered [him]" and he "couldn't do anything because the grievance officer [did] not respond[.]" *Id.* Attached to Plaintiff's complaint is a letter dated September 27, 2019, from C. Tapia, IGP, acknowledging receipt of five pages of correspondence, assigned Grievance No. MS-24259-19. *Id.* at 8. The letter indicates Grievance No. MS-24259-19 was "forwarded to the Superintendent in accordance with Directive #4040" and that Plaintiff would be "notified of the results." *Id.* The letter stated to "Please refer to this grievance # with any future inquires." *Id.*

2    Christopher Tapia is the Inmate Grievance Program ("IGP") Supervisor at Mid-State. (Dkt. No. 23-1 at ¶ 3.)

**\*2**  Plaintiff's complaint is dated September 27, 2019. *Id.* at 7. It was notarized on October 3, 2019, and was stamped received by the Clerk for the W.D.N.Y. on October 11, 2019. *Id.* The matter was subsequently transferred to this District by Order of U.S. District Judge Elizabeth A. Wolford, issued on October 15, 2019. (Dkt. No. 5.) Upon receipt of the action, this Court issued a Decision and Order denying Plaintiff's *in forma pauperis* ("IFP") application as incomplete. (Dkt. No. 7.) Plaintiff filed a second IFP application and pursuant to the District Court's March 30, 2020, Decision and Order, Plaintiff's First Amendment free exercise claims against Defendants C.O. Lindermayer, Sgt. Short, and C.O. O'Neil survived initial review, and summonses were issued as to them. (Dkt. Nos. 8, 10, 11.)

Defendants have not answered the complaint and instead move for summary judgment based solely on exhaustion grounds. (Dkt. No. 21-1.) To that end, Defendants have submitted sworn declarations from Rachel Seguin, the Assistant Director of the IGP for DOCCS, and Christopher Tapia, Supervisor of the IGP at Mid-State, describing DOCCS' administrative exhaustion process. (Dkt. Nos. 29-2, 29-3.) Defendants offer evidence that on or about September 4, 2019, Plaintiff filed a series of letters that were consolidated into Grievance No. MS-24269-19, which alleged that on September 1, 2019, during a cell integrity check, C.O. Lindermayer threw out the sacrifices at his altar. (Dkt. No. 21-2 at ¶ 6.) The letters also alleged that, at some point between September 1, 2019 and September 3, 2019, C.O. O'Neil referred to Plaintiff's religion as "voodoo," and that Sgt. Short also interfered with his religious practice. *Id.* The first page of Grievance No. MS-24269-19, was stamped received by the "IGP Office" on September 4, 2019. (*See* Dkt. No. 21-3 at 8.) Due to the nature of the allegations, Grievance No. MS-24269-19 was forwarded to the Superintendent. (Dkt. No. 21-2 at ¶ 7.) On or about April 30, 2020, the Superintendent issued a determination denying Grievance No. MS-24269-19. *Id.* There is no record of Plaintiff appealing Grievance No. MS-24269-19 to the Central Office Review Committee ("CORC"). *Id.* at ¶¶ 9, 13. Thus, Defendants argue summary judgment is appropriate in this case because Plaintiff failed to fully exhaust his administrative remedies prior to the commencement of this action. (Dkt. No. 21-1.) As noted above, Plaintiff has failed to submit any opposition to Defendants' motion.

## III. DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

### A. Standard of Review

A court shall grant summary judgment only if the submissions of the parties taken together "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986); Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating "the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A fact is "material" if it "might affect the outcome of the suit under the governing law" and is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

In determining whether a genuine issue of material fact exists, the court must resolve all ambiguities and draw all reasonable inferences against the moving party. *Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 309 (2d Cir. 2008). A verified complaint, as Plaintiff has filed in this case, is to be treated as an affidavit. *Colon v. Coughlin*, 58 F.3d 865, 872 (2d

Jenkins v. Short, Not Reported in Fed. Supp. (2020)
2020 WL 9264842

Case 9:23-cv-01142-LEK-TWD   Document 35   Filed 02/13/25   Page 14 of 54

Cir. 1995) ("A verified complaint is to be treated as an affidavit ... and therefore will be considered in determining whether material issues of fact exist[.]") (citations omitted).

**\*3** Where a party is proceeding *pro se*, the court must "read [the *pro se* party's] supporting papers liberally, and ... interpret them to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994). However, "a *pro se* party's 'bald assertion,' unsupported by evidence, is not sufficient to overcome a motion for summary judgment." *Cole v. Artuz*, No. 93 Civ. 5981 (WHP)(JCF), 1999 WL 983876, at \*3 (S.D.N.Y. Oct. 28, 1999) (citing *Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991)).

As noted, Plaintiff did not respond to Defendants' motion for summary judgment. Defendants' motion advised Plaintiff of the consequences of failing to respond to the motion. (Dkt. No. 21 at 3.) The Clerk of the Court provided Plaintiff a similar notice. (Dkt. No. 24.) When Plaintiff failed to timely respond to the motion, the Court *sua sponte* granted Plaintiff additional time in which to do so, again advising Plaintiff of the consequences of failing to respond. (*See* Dkt. Nos. 25, 26, 27, 28.)

"The fact that there has been no response to a summary judgment motion does not, of course, mean that the motion is to be granted automatically." *Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996). However, when a motion for summary judgment is unopposed, the court may "grant summary judgment if the motion and supporting materials - including the facts considered undisputed - show that the movant is entitled to it." Fed. R. Civ. P. 56(e)(3); *see also* N.D.N.Y. L.R. 7.1(b)(3) ("Where a properly filed motion is unopposed and the Court determines that the moving party has met its burden to demonstrate entitlement to the relief requested therein, the non-moving party's failure to file or serve any papers ... shall be deemed as consent to the granting or denial of the motion."). Moreover, all properly supported facts set forth in Defendants' Statement of Material Facts that have not been specifically controverted shall be deemed admitted. N.D.N.Y. L.R. 7.1(a)(3).

### B. Exhaustion of Administrative Remedies

The Prison Litigation Reform Act of 1995 ("PLRA"), provides, in pertinent part, "[n]o action shall be brought with respect to prison conditions under section 1983 ... by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion is required for "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). "[E]xhaustion is mandatory under the PLRA and ... unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007); *see also Ross v. Blake*, 136 S. Ct. 1850, 1856 (2016) (stating that the mandatory language of § 1997e(a) forecloses judicial discretion to craft exceptions to the requirement).

To properly exhaust administrative remedies under the PLRA, inmates are required to complete the administrative review process in accordance with the rules applicable to the institution to which they are confined. *Jones*, 549 U.S. at 218 (citing *Woodford v. Ngo*, 548 U.S. 81, 88 (2006)); *see also Amador v. Andrews*, 655 F.3d 89, 96 (2d Cir. 2011) (exhaustion necessitates "using all steps that the [government] agency holds out, and doing so properly").

**\*4** In New York State prisons, DOCCS has a well-established three-step administrative review process. *See* 7 N.Y.C.R.R. § 701.5. First, an inmate must file a complaint with the facility's IGP clerk within twenty-one calendar days of the alleged occurrence. *Id.* § 701.5(a). A representative of the facility's inmate grievance resolution committee ("IGRC") has sixteen calendar days from receipt of the grievance to informally resolve the issue. *Id.* § 701.5(b)(1). If there is no such informal resolution, then the full IGRC conducts a hearing within sixteen calendar days of receipt of the grievance, *id.* § 701.5(b)(2), and issues a written decision within two working days of the conclusion of the hearing. *Id.* § 701.5(b)(3).

Second, a grievant may appeal the IGRC decision to the facility's Superintendent within seven calendar days of receipt of the IGRC's written decision. *Id.* § 701.5(c)(1). If the grievance involves an institutional issue (as opposed to a DOCCS-wide policy issue), the Superintendent must issue a written decision within twenty calendar days of receipt of the grievant's appeal. *Id.* § 701.5(c)(3)(ii).

Third, a grievant may appeal to CORC within seven working days of receipt of the Superintendent's written decision. *Id.* § 701.5(d)(1)(i). CORC is to render a written decision within thirty calendar days of receipt of the appeal. *Id.* § 701.5(d)(3)(ii).

Where the grievance involves allegations of employee misconduct, as alleged here, there is an expedited administrative process. *See id.* § 701.8. Complaints of harassment, once given a number and recorded by the IGP clerk, are forwarded directly to the Superintendent of the facility. *Id.* In such cases the Superintendent is required to order an investigation and render a decision within twenty-five calendar days. *Id.* § 701(a)-(f). If the Superintendent fails to respond within the required twenty-five day time limit, the inmate may appeal his grievance to CORC. *Id.* § 701.8(g). Disagreement with the Superintendent's decision in the expedited review process also requires an appeal to the CORC. *See id.* § 701.8-(g)-(h); *see also Espinal v. Goord*, 588 F.3d 119, 125 (2d Cir. 2009) (explaining IGP and the expedited procedure for harassment claims and its appeal mechanism through the CORC). Thereafter, CORC must render a written decision within thirty days of receipt of the appeal. *Id.* § 701.8(i). The Second Circuit has long recognized this procedure as an "available remedy" for purposes of the PLRA. *See Hall v. Cty. of Saratoga*, No. 10-CV-1120 (NAM/CFH), 2013 WL 838284, at *1-2 (N.D.N.Y. Mar. 6, 2013).

At each step of the IGP, a decision must be rendered within a specified time period. "Where the IGRC and/or Superintendent do not timely respond, an inmate must appeal to 'the next step,' " assuming there is a "next step" in the grievance process. *Eleby v. Smith*, No. 9:15-CV-0281(TJM/DEP), 2017 WL 986123, at *4 (N.D.N.Y. Jan. 9, 2017) (quoting 7 N.Y.C.R.R. § 701.6(g)(2)).

Generally, if a plaintiff fails to follow each of the required steps prior to commencing litigation, he has failed to exhaust his administrative remedies as required under the PLRA. *See Ruggiero v. Cty. of Orange*, 467 F.3d 170, 176 (2d Cir 2006) ("[T]he PLRA requires proper exhaustion, which means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits)." (quotation marks and citations omitted)).

Nevertheless, while the PLRA mandates exhaustion of administrative remedies, it also "contains its own, textual exception to mandatory exhaustion." *Ross*, 136 S. Ct. at 1858. More specifically, Section 1997e(a) provides only those administrative remedies that "are available" must first be exhausted. 42 U.S.C. § 1997e(a); *Ross*, 136 S. Ct. at 1858 ("[T]he exhaustion requirement hinges on the availability of administrative remedies[.]" (quotation marks and citations omitted)). In the PLRA context, the Supreme Court has determined "availability" means "an inmate is required to exhaust those, but only those, grievance procedures that are capable of use to obtain some relief for the action complained of." *Ross*, 136 S. Ct. at 1859 (quotation marks and citations omitted).

 **\*5** The *Ross* Court identified three circumstances in which a court may find internal administrative remedies are not available to prisoners under the PLRA. *Id.* at 1859-60. First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Id.* at 1859. "Next, an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use." *Id.* Finally, an administrative remedy is not "available" when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 1860.

Because failure to exhaust is an affirmative defense, the defendants bears the burden of showing that an inmate has failed to satisfy the exhaustion requirements. *See Jones*, 549 U.S. at 216; *Williams v. Priatno*, 829 F.3d 118, 122 (2d Cir. 2016). Whether the plaintiff has exhausted his administrative remedies is a question of law. *See Snider v. Melindez*, 199 F.3d 108, 113-14 (2d Cir. 1999). Thus, an inmate's failure to exhaust administrative remedies is properly considered on a motion for summary judgment in lieu of an answer. *Crichlow v. Fischer*, No. 6:15-CV-06252 EAW, 2017 WL 920753, at *5 (W.D.N.Y. Mar. 7, 2017) (citing *Crenshaw v. Syed*, 686 F. Supp. 2d 234, 236 (W.D.N.Y. 2010) (granting a motion for summary judgment *made in lieu of* an answer where inmate failed to exhaust administrative remedies)).

Here, it is undisputed Plaintiff failed to avail himself of the full panoply of administrative remedies prior to commencing this action. (Dkt. No. 21-2.) The record before the Court demonstrates Plaintiff completed only the first step of the grievance process before commencing this lawsuit. *Id.* As stated above, Plaintiff filed a series of letters that were consolidated into

Grievance No. MS-24269-19. *Id.* at ¶ 7. Due to the nature of the allegations, Grievance No. MS-24269-19 was forwarded to the Superintendent for investigation in accordance with DOCCS policy on or about September 4, 2019. *Id.* at ¶ 8. On April 30, 2020, the Superintendent issued a determination denying Grievance No. MS-24269-19. *Id.* at ¶ 9. However, Plaintiff did not appeal the Superintendent's denial of Grievance No. MS-24269-19 to CORC. *Id.* at ¶ 10.

For these reasons, the Court finds Plaintiff failed to exhaust his administrative remedies. *See Bennett v. Fletcher*, No. 9:17-CV-849 (GTS/CFH), 2020 WL 872491, at *7 (N.D.N.Y. Jan. 16, 2020) (citing *Omaro v. Annucci*, 68 F. Supp. 3d 359, 364 (W.D.N.Y. 2014) ("It is well-established that an inmate who does not appeal to CORC has failed to exhaust his administrative remedies.")), *report-recommendation adopted by* 2020 WL 871156 (N.D.N.Y. Feb. 21, 2020); *see, e.g., Hamm v. Farney*, No. 9:13-CV-1302 (BKS/CFH), 2017 WL 8894723, at *5 (N.D.N.Y. Dec. 22, 2017), *report and recommendation adopted by* 2018 WL 922149 (N.D.N.Y. Feb. 16, 2018) (dismissing the plaintiff's complaint for failure to exhaust where the IGP supervisor and DOCCS Assistant Director of IGP both declared that "a search of the DOCCS database confirmed plaintiff's original grievance, as well as an appeal to the Superintendent, but produced no record of an appeal to CORC"); *see also Teaque v. Mullen*, No. 9:18-CV-01412 (GTS/CFH), 2019 WL 8589277, at *7 (N.D.N.Y. Dec. 17, 2019) ("Because plaintiff commenced this action before receiving a response from the Superintendent of Mid-State regarding his grievance, plaintiff did not fully exhaust his administrative remedies before commencing this action."), *report and recommendation adopted by* 2020 WL 858355 (N.D.N.Y. Feb. 21, 2020).

**\*6** "[O]nce a defendant has adduced reliable evidence that administrative remedies were available to the plaintiff and that the plaintiff nevertheless failed to exhaust those remedies, the plaintiff must then 'counter' the defendant's assertion by showing exhaustion [or] unavailability" under *Ross*. *Ferrer v. Racette*, No. 14-cv-1370 (GTS/DJS), 2017 WL 6459525, at *12 (N.D.N.Y. Dec. 18, 2017) (citation omitted); *see Perez v. Colon*, No. 9:19-CV-722 (GTS/DJS), 2020 WL 4549206, at *4 (N.D.N.Y. June 16, 2020) ("finding no basis appeared on the record for concluding that DOCCS' grievance procedure was unavailable to the plaintiff given he failed to respond to the defendants' motion"), *report and recommendation adopted by* 2020 WL 4530602 (N.D.N.Y. Aug. 6, 2020).

Although he did not respond to Defendants' motion, Plaintiff's verified complaint suggests administrative remedies were unavailable to him at the time he commenced this action because the "grievance officer [did] not respond[.]" (Dkt. No. 1 at 7.) Defendants recognize the Superintendent's decision was issued beyond the 25 calendar days set forth in 7 N.Y.C.R.R. § 701.8(f). (Dkt. No. 21-1 at 7-8.) However, it is well-settled that where an inmate does not receive a response to a grievance, the inmate must appeal to the next level of review notwithstanding a lack of response at any level of review. *See Smith v. Kelly*, 985 F. Supp. 2d 275, 281 (N.D.N.Y. 2013) (Suddaby, C.J.) ("[A]ny failure by the IGRC or the Superintendent to timely respond to a grievance ... can—and must—be appealed to the next level ... to complete the grievance process.").

Here, when the Superintendent did not render a decision on Plaintiff's grievance within 25 days (i.e., by September 29, 2019), Plaintiff had the ability to file an appeal with CORC. *See* 7 N.Y.C.R.R. § 701.8(g). "[I]nstead of doing so, [Plaintiff] rushed to Court, without attempting to appeal (the Superintendent's non-response) to [CORC] eviscerating the purpose of the administrative remedy process." *Teaque v. Mullen*, 2020 WL 858355, at *4 (citing *Woodford*, 548 U.S. at 89 (articulating two main purposes of exhaustion of administrative remedies)). Thus, because Plaintiff failed to appeal the Superintendent's non-response to the next level, he cannot be excused from the grievance process. *See Heyliger v. Gebler*, 624 F. App'x 780, 782 (2d Cir. 2015) (summary order) ("Under the regulations ..., if at any step of the grievance process, an inmate did not receive a response within the specified timeframe, he was nonetheless permitted to 'appeal[ ] to the next step.' ") (quoting N.Y. Comp. Codes R. & Regs. tit. 7, § 701.6(g)(2) (2015)).

Based on the foregoing, the Court agrees with Defendants that Plaintiff failed to avail himself of the full panoply of administrative remedies prior to commencing this action. *See James v. Doty*, No. 9:17-CV-1145 (MAD/CFH), 2019 WL 1474309, at *5 (N.D.N.Y. Jan. 4, 2019) ("Plaintiff does not suggest, and the record does not demonstrate, that plaintiff appealed the non-response to CORC."), *report and recommendation adopted by* 2019 WL 457694 (N.D.N.Y. Feb. 6, 2019).

Jenkins v. Short, Not Reported in Fed. Supp. (2020)

2020 WL 9264842

Moreover, there is no evidence in the record showing the grievance procedure "operate[d] as a simple dead end" to Plaintiff, nor is there any evidence to establish an issue of fact as to unavailability due to an "opaque" administrate scheme. *See Ross*, 136 S. Ct. at 1859-60. As pointed out by Defendants, Plaintiff filed and appealed the denial of an unrelated grievance (Grievance No. MS-24271-19) to CORC on or about November 7, 2019. (Dkt. No. 21-2 at ¶ 10.) *See also Gonzalez v. Coburn*, No. 6:16-cv-6174, 2017 WL 6512859, at *6 (W.D.N.Y. Dec. 20, 2017) (finding the plaintiff's decision to affirmatively participate at all three levels in the inmate grievance program demonstrates that the program was neither a dead-end nor so opaque that he could not avail himself of it). Lastly, the record does not demonstrate prison administrators prevented Plaintiff from using the grievance procedure due to "machination, misrepresentation, or intimidation." *See Ross*, 136 S. Ct. at 1859-60. Thus, given the record and considering the evidence in the light most favorable to Plaintiff, the Court finds there is no genuine dispute of fact that administrative remedies were available.

 **\*7** In light of the foregoing, the Court recommends granting Defendants' motion for summary judgment, as there is no genuine issue of material fact that Plaintiff failed to exhaust his administrative remedies. Generally, a dismissal for failure to exhaust administrative remedies is without prejudice, so that the inmate-plaintiff can cure the defect by exhausting his administrative remedies and then reinstituting his suit. *See Snider v. Melindez*, 199 F. 3d 108, 111-12 (2d Cir. 1999). However, dismissal with prejudice is appropriate where the plaintiff had the opportunity to exhaust administrative remedies, failed to do so, and is unable to cure his failure to exhaust. *Berry v. Kerik*, 366 F.3d 85, 87 (2d Cir. 2004).

Here, more than six months have passed since Plaintiff should have appealed Grievance No. MS-24269-19 to CORC. (*See* Dkt. No. 21-2 at ¶¶ 8, 9, 13.) As Plaintiff's failure to exhaust his administrative remedies is incurable at this point, the Court recommends dismissing Plaintiff's complaint with prejudice. *See Castineiras v. Helms*, No. 9:17-CV-1084 (BKS/ATB), 2019 WL 2870300, at *5-6 (N.D.N.Y. June 6, 2019).

## IV. CONCLUSION

After carefully considering the record, the Court finds Plaintiff failed to exhaust his administrative remedies.

**ACCORDINGLY**, it is hereby

**RECOMMENDED** that Defendants' motion for summary judgment (Dkt. No. 21) be **GRANTED**; and it is further

**RECOMMENDED** that Plaintiff's complaint (Dkt. No. 1) be **DISMISSED WITH PREJUDICE**; and it is further

**ORDERED** that the Clerk provide Plaintiff with a copy of this Order and Report-Recommendation, along with copies of the unpublished decisions cited herein in accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2008) (per curiam).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report.[3] Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989) (per curiam)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a).

---

[3]    If you are proceeding *pro se* and are served with this Order and Report-Recommendation by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Order and Report-Recommendation was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. P. 6(a)(1)(C).

Case 9:23-cv-01142-LEK-TWD    Document 35    Filed 02/13/25    Page 18 of 54

**Jenkins v. Short, Not Reported in Fed. Supp. (2020)**
2020 WL 9264842

**All Citations**

Not Reported in Fed. Supp., 2020 WL 9264842

---

                                            © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Jenkins v. Short, Not Reported in Fed. Supp. (2021)

2021 WL 958512

2021 WL 958512
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Darell JENKINS, Plaintiff,

v.

Sgt. SHORT; Officer Oneill; and Officer Lindermayer, Defendants.

9:19-CV-1352 (GTS/TWD)
|
Signed 03/15/2021

**Attorneys and Law Firms**

DARELL JENKINS, 18-A-0025, Plaintiff, Pro Se, Clinton Correctional Facility, P.O. Box 2000, Dannemora, New York 12929.

HON. LETITIA A. JAMES, Attorney General for the State of New York Counsel for Defendants, OF COUNSEL: LAUREN ROSE EVERSLEY, ESQ., Assistant Attorney General, The Capitol, Albany, New York 12224.

**DECISION and ORDER**

GLENN T. SUDDABY, Chief United States District Judge

 **\*1**  Currently before the Court, in this *pro se* prisoner civil rights action filed by Darell Jenkins ("Plaintiff") against the above three employees of the New York State Department of Corrections and Community Supervision ("Defendants") pursuant to 42 U.S.C. § 1983, are (1) United States Magistrate Judge Thérèse Wiley Dancks' Report-Recommendation recommending that Defendants' motion for summary judgment be granted and that Plaintiff's Complaint be dismissed with prejudice for failure to exhaust his administrative remedies, and (2) Plaintiff's Objection to the Report-Recommendation. (Dkt. Nos. 29, 30-31.) For the reasons set forth below, the Report-Recommendation is accepted and adopted in its entirety.

**I. RELEVANT BACKGROUND**
Generally, in her Report-Recommendation, Magistrate Judge Dancks found that (1) because Plaintiff failed to exhaust his available administrative remedies before filing his Complaint, Defendants' motion for summary judgment should be granted, and (2) because Plaintiff cannot at this point cure his failure to exhaust, his Complaint should be dismissed with prejudice. (Dkt. No. 29, at 2-4, 6-13.)

Generally, in his Objection, Plaintiff asserts that his Complaint should not be dismissed with prejudice for failure to exhaust because "the Superintendent never responded back to me when I appealed the grievance." (Dkt. No. 30.) In addition, Plaintiff submits a decision from the Central Officer Review Committee, dated September 10, 2020, deciding his appeal. (Dkt. No. 31.)

**II. STANDARD OF REVIEW**
When a *specific* objection is made to a portion of a magistrate judge's report-recommendation, the Court subjects that portion of the report-recommendation to a *de novo* review. Fed. R. Civ. P. 72(b)(2); 28 U.S.C. § 636(b)(1)(C). To be "specific," the objection must, with particularity, "identify [1] the portions of the proposed findings, recommendations, or report to which it has an objection and [2] the basis for the objection." N.D.N.Y. L.R. 72.1(c). [1]  When performing such a *de novo* review, "[t]he judge may ... receive further evidence...." 28 U.S.C. § 636(b)(1). However, a district court will ordinarily refuse to consider evidentiary

2021 WL 958512

material that could have been, but was not, presented to the magistrate judge in the first instance.[2] Similarly, a district court will ordinarily refuse to consider argument that could have been made, but was not, presented to the magistrate judge in the first instance. *See Zhao v. State Univ. of N.Y.*, 04-CV-0210, 2011 WL 3610717, at *1 (E.D.N.Y. Aug. 15, 2011) ("[I]t is established law that a district judge will not consider new arguments raised in objections to a magistrate judge's report and recommendation that could have been raised before the magistrate but were not.") (internal quotation marks and citation omitted); *Hubbard v. Kelley*, 752 F. Supp.2d 311, 312-13 (W.D.N.Y. 2009) ("In this circuit, it is established law that a district judge will not consider new arguments raised in objections to a magistrate judge's report and recommendation that could have been raised before the magistrate but were not.") (internal quotation marks omitted).

[1]    *See also Mario v. P&C Food Markets, Inc.*, 313 F.3d 758, 766 (2d Cir. 2002) ("Although Mario filed objections to the magistrate's report and recommendation, the statement with respect to his Title VII claim was not specific enough to preserve this claim for review. The only reference made to the Title VII claim was one sentence on the last page of his objections, where he stated that it was error to deny his motion on the Title VII claim '[f]or the reasons set forth in Plaintiff's Memorandum of Law in Support of Motion for Partial Summary Judgment.' This bare statement, devoid of any reference to specific findings or recommendations to which he objected and why, and unsupported by legal authority, was not sufficient to preserve the Title VII claim.").

[2]    *See Paddington Partners v. Bouchard*, 34 F.3d 1132, 1137-38 (2d Cir. 1994) ("In objecting to a magistrate's report before the district court, a party has no right to present further testimony when it offers no justification for not offering the testimony at the hearing before the magistrate.") [internal quotation marks and citations omitted]; *Pan Am. World Airways, Inc. v. Int'l Bhd. of Teamsters*, 894 F.2d 36, 40, n.3 (2d Cir. 1990) (finding that district court did not abuse its discretion in denying plaintiff's request to present additional testimony where plaintiff "offered no justification for not offering the testimony at the hearing before the magistrate"); *cf. U. S. v. Raddatz*, 447 U.S. 667, 676, n.3 (1980) ("We conclude that to construe § 636(b)(1) to require the district court to conduct a second hearing whenever either party objected to the magistrate's credibility findings would largely frustrate the plain objective of Congress to alleviate the increasing congestion of litigation in the district courts."); Fed. R. Civ. P. 72(b), Advisory Committee Notes: 1983 Addition ("The term 'de novo' does not indicate that a secondary evidentiary hearing is required.").

 **\*2**   When only a *general* objection is made to a portion of a magistrate judge's report-recommendation, the Court subjects that portion of the report-recommendation to only a *clear error* review. Fed. R. Civ. P. 72(b)(2),(3); Fed. R. Civ. P. 72(b), Advisory Committee Notes: 1983 Addition; *see also Brown v. Peters*, 95-CV-1641, 1997 WL 599355, at *2-3 (N.D.N.Y. Sept. 22, 1997) (Pooler, J.) [collecting cases], *aff'd without opinion*, 175 F.3d 1007 (2d Cir. 1999). Similarly, when an objection merely reiterates the *same arguments* made by the objecting party in its original papers submitted to the magistrate judge, the Court subjects that portion of the report-recommendation challenged by those arguments to only a *clear error* review.[3] Finally, when *no* objection is made to a portion of a report-recommendation, the Court subjects that portion of the report-recommendation to only a *clear error* review. Fed. R. Civ. P. 72(b), Advisory Committee Notes: 1983 Addition. When performing such a "clear error" review, "the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Id.*[4]

[3]    *See Mario*, 313 F.3d at 766 ("Merely referring the court to previously filed papers or arguments does not constitute an adequate objection under either Fed. R. Civ. P. 72(b) or Local Civil Rule 72.3(a)(3)."); *Camardo v. Gen. Motors Hourly-Rate Emp. Pension Plan*, 806 F. Supp. 380, 382 (W.D.N.Y. 1992) (explaining that court need not consider objections that merely constitute a "rehashing" of the same arguments and positions taken in original papers submitted to the magistrate judge); *accord, Praileau v. Cnty. of Schenectady*, 09-CV-0924, 2010 WL 3761902, at *1, n.1 (N.D.N.Y. Sept. 20, 2010) (McAvoy, J.); *Hickman ex rel. M.A.H. v. Astrue*, 07-CV-1077, 2010 WL 2985968, at *3 & n.3 (N.D.N.Y. July 27, 2010) (Mordue, C.J.); *Almonte v. N.Y.S. Div. of Parole*, 04-CV-0484, 2006 WL 149049, at *4 (N.D.N.Y. Jan. 18, 2006) (Sharpe, J.).

2021 WL 958512

4      *See also Batista v. Walker*, 94-CV-2826, 1995 WL 453299, at *1 (S.D.N.Y. July 31, 1995) (Sotomayor, J.) ("I am
       permitted to adopt those sections of [a magistrate judge's] report to which no specific objection is made, so long as those
       sections are not facially erroneous.") (internal quotation marks and citations omitted).

After conducting the appropriate review, the Court may "accept, reject, or modify, in whole or in part, the findings or
recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C).

## III. ANALYSIS

After carefully considering the matter, the Court can find no error in Magistrate Judge Dancks' thorough Report-
Recommendation, clear or otherwise. Magistrate Judge Dancks employed the proper standards, accurately recited the facts, and
reasonably applied the law to those facts. As a result, the Report-Recommendation is accepted and adopted in its entirety for
the reasons set forth therein. To those reasons, the Court adds only four points.

First, the Court is unpersuaded by Plaintiff's argument in his Objection his Complaint should not be dismissed with prejudice
because "the Superintendent never responded back to me when I appealed the grievance." The Court will set aside the fact that,
literally speaking, this assertion is undermined by the record evidence: the Superintendent did respond to him, on April 30,
2020. (*See* Dkt. No. 21, Attach. 3, at 12 [attaching decision by Superintendent dated Apr. 30, 2020].) More important, liberally
construed, Plaintiff's argument is that the Superintendent never *timely* responded to him. The problem with this argument is
that it is immaterial, because Plaintiff adduces no evidence, or even argument, that the time for the Superintendent to respond
had expired by October 3, 2019 (or even that he had filed an appeal to the Central Office Review Committee and failed to receive
a timely response by that time). Regardless of whether the Superintendent failed to timely respond to him, Plaintiff filed his
Complaint in this action without waiting the necessary time for a response from him (and/or without filing an appeal to the
Central Office Review Committee and waiting the necessary time for a response from it).

 **3  Second, the Report-Recommendation appears to repeat a typographical error contained in Defendants' Statement of
Material Facts: the assertion that Plaintiff filed a grievance numbered "MS-24269-19" that was distinct from the grievance that
was numbered "MS-24259-19." (*Compare* Dkt. No. 21, Attach. 2, at ¶¶ 6-8, 12 [Defs.' Statement of Material Fact, referencing
a grievance numbered "MS-24269-19"] *with* Dkt. No. 21, Attach. 2, at ¶ 13 [Defs.' Statement of Material Fact, referencing a
grievance numbered "MS-24259-19"]; *see also* Dkt. No. 29, at 3-4, 13 [Report-Recommendation, referencing both numbers].)
In fact, the record evidence relied on by Defendants for this assertion (that there existed a grievance numbered "MS-24269-19")
does not support the assertion, but merely the assertion that there existed a grievance numbered "MS-24259-19." (Dkt. No. 21,
Attach. 3, at ¶¶ 16, 17, 20 [Tapia Decl., referencing a grievance numbered "MS-24259-19"].)

However, this typographical error does not change the correctness of the Report-Recommendation's finding and conclusion that
Plaintiff failed to exhaust his available administrative remedies before he filed his Complaint in this action (pursuant to the
"Prison Mailbox Rule") on October 3, 2019. By that time, he had not received a decision of his grievance by the Superintendent,
and could not realistically have appealed that decision (or the Superintendent's failure to issue a timely decision) to the Central
Office Review Committee and received a response (or failed to receive a timely response) from it.

This is because attached to the Complaint (which is sworn and thus has the force and effect of an affidavit for purposes of a
motion for summary judgment) is a notice dated September 27, 2019, advising Plaintiff that his five pages of previous
correspondence (from September 1-3, 2019), had been received by the Inmate Grievance Program Supervisor, construed
together as a grievance, assigned a grievance number, and forwarded to the Superintendent for decision. (Dkt. No. 1, at 8.) This
failure of Plaintiff to exhaust his available administrative remedies before filing his Complaint is also asserted in Defendants'
Statement of Undisputed Material Facts and not controverted by Plaintiff (despite the fact that he was twice specifically advised
of the consequences of failing to properly oppose Defendants' motion and was granted three extensions of time in which to do
so). (*Compare* Dkt. No. 21, Attach. 2, at ¶¶ 2, 6-8 [Defs.' Statement of Material Facts] *with* Dkt. No. 25 [Plf.'s Response].)

Case 9:23-cv-01142-LEK-TWD    Document 35    Filed 02/13/25    Page 22 of 54

Jenkins v. Short, Not Reported in Fed. Supp. (2021)

2021 WL 958512

Third, rather than oppose Defendants' motion, Plaintiff attempts to adduce new evidence as part of his objection to the Report-Recommendation. The Court declines to consider this late-blossoming evidence for each of two independent reasons. [5] First, Plaintiff has not persuaded the Court that he could not have presented the evidence to Magistrate Judge Dancks before the issuance of her Report-Recommendation, thus causing a waste of judicial resources (and a frustration of the purpose of the Federal Magistrates Act of 1968) if the Court were to consider it now. *See, supra,* note 2 and accompanying text of this Decision and Order. The Court notes that the document appears to have been created on or soon after September 10, 2020, and Plaintiff's final response deadline was not until November 2, 2020. Second, in any event, the document in no way shows that Plaintiff exhausted his available administrative remedies before filing his Complaint in this action; and, indeed, it contradicts any such assertion.

[5]    For the sake of brevity, the Court will set aside the fact that the bottom of the document appears missing, and the fact that the document is not introduced by an affidavit, rendering it somewhat questionable.

Fourth, and finally, although it is conceivable that this late-blossoming document could affect Magistrate Judge Dancks' finding that Plaintiff cannot now cure his failure to exhaust, the Court finds that it does not do so because, again, the Court is exercising its discretion to not consider the document: Plaintiff had a full and fair opportunity to present it to Magistrate Judge Dancks (before the issuance of her thoughtful Report-Recommendation) and he chose not to do so. [6]

[6]    The Court notes that any arguable prejudice to Plaintiff resulting from this exercise of the Court's discretion is lessened by the fact that, in its decision, the Central Office Review Committee granted Plaintiff the injunctive relief he requested in this action. (*Compare* Dkt. No. 1, at 5 [Complaint, requesting, as relief, "$50,000 and to be able to practice my religion and have frankenscent [sp] oils for my altar"] *with* Dkt. No. 31, at 1 [CORC Decision, accepting the grievance in part, and explaining that Plaintiff has been "permitted religious items"].)

**\*4  ACCORDINGLY**, it is

**ORDERED** that Magistrate Dancks' Report-Recommendation (Dkt. No. 29) is **ACCEPTED** and **ADOPTED** in its entirety; and it is further

**ORDERED** that Defendants' motion for summary judgement (Dkt. No. 21) is **GRANTED**; and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED with prejudice**.

The Court finds that an appeal from this Decision and Order would not be taken in good faith.

**All Citations**

Not Reported in Fed. Supp., 2021 WL 958512

---

WESTLAW   © 2025 Thomson Reuters. No claim to original U.S. Government Works.                                    4

Hudson v. Kirkey, Not Reported in Fed. Supp. (2023)

2023 WL 2324988

2023 WL 2324988
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Michael T. HUDSON, Plaintiff,

v.

Correction Officer C. KIRKEY, et al., Defendants.

9:20-CV-00581 (LEK/DJS)
|
Signed March 2, 2023

**Attorneys and Law Firms**

Michael T. Hudson, Easton, PA, Pro Se.

Matthew Gallagher, State of New York - Attorney General, Albany Office, Albany, NY, for Defendant Correction Officer C. Kirkey.

**MEMORANDUM-DECISION AND ORDER**

LAWRENCE E. KAHN, United States District Judge

**I. INTRODUCTION**

**\*1** Plaintiff Michael Hudson commenced this action pro se on May 28, 2020, alleging violations of Eighth Amendment rights at Mohawk Correctional Facility against Defendants Correction Officer ("C.O.") C. Kirkey, Sergeant John Doe, C.O. John Does 1–7, Nurse Jane Doe, and Doctor Jane Doe (collectively, "Defendants"). Dkt. No. 1 ("Complaint"). On October 13, 2020, Defendants filed their first motion for summary judgment. Dkt. No. 17. Thereafter on January 26, 2021, the Honorable Daniel J. Stewart, United States Magistrate Judge, issued a Report-Recommendation recommending that this Court grant Defendants' first motion for summary judgment. Dkt. No. 25 ("January 2021 Report-Recommendation"). This Court rejected Judge Stewart's January 2021 Report-Recommendation on May 17, 2021, and denied Defendants' first motion for summary judgment. Dkt. No. 27 ("May 2021 Order").

On July 29, 2022, Defendants filed another motion for summary judgment. Dkt. No. 49 ("Motion"). Judge Stewart issued another Report-Recommendation—the underlying Report-Recommendation at issue here—recommending that Defendants' Motion be granted in part and denied in part. Dkt. No. 55 ("Report-Recommendation"). Defendants filed objections to the portion of Judge Stewart's Report-Recommendation recommending that Defendants' Motion be denied. Dkt. No. 57 ("Objections"). Plaintiff has not filed a response. See Docket. For the reasons that follow, the Court approves and adopts Judge Stewart's Report-Recommendation, with the modification that Judge Stewart hold an exhaustion hearing pursuant to Messa v. Goord, 652 F.3d 305 (2d Cir. 2011), to determine whether Plaintiff properly exhausted his administrative remedies concerning his excessive force claim against Kirkey.

**II. BACKGROUND**

**A. Factual History**

Plaintiff's factual allegations are detailed in the Report-Recommendation, familiarity with which is assumed. See R. & R. at 2–3.

Hudson v. Kirkey, Not Reported in Fed. Supp. (2023)
2023 WL 2324988
Case 9:23-cv-01142-LEK-TWD    Document 35    Filed 02/13/25    Page 24 of 54

### B. Report-Recommendation

In the Report-Recommendation, Judge Stewart recommended that Defendants' Motion be denied in part and granted in part. Judge Stewart recommended denying Defendants' Motion predicated on the defense of exhaustion under the Prison Litigation Reform Act ("PLRA") with respect to Plaintiff's excessive force claim against Kirkey. R. & R. at 5–7. In particular, Judge Stewart found that the record could be read to show that Plaintiff submitted a grievance that was never filed. Id. at 6. Judge Stewart also stated that Defendants failed to provide affirmative evidence to establish that no grievance was filed. Id. However, Judge Stewart recommended granting summary judgment on the rest of Plaintiff's allegations because (1) Plaintiff failed to identify the Doe Defendants; (2) Plaintiff conceded that a certain physical force incident did not occur; and (3) Plaintiff's medical indifference claim remained unexhausted. Id. at 7–8.

## III. STANDARD OF REVIEW

Within fourteen days after being served with a copy [of the Magistrate Judge's report and recommendation], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of the court." 28 U.S.C. § 636(b)(1)(C); see also L.R. 72.1. If objections are timely filed, a court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C). De novo review "does not require the Court to conduct a new hearing; rather, it mandates that the Court give fresh consideration to those issues to which specific objections have been made." A.V. by Versace, Inc. v. Gianni Versace, S.p.A., 191 F. Supp. 2d 404, 406 (S.D.N.Y. 2002).

*2 However, if no objections are made, or if an objection is general, conclusory, perfunctory, or a mere reiteration of an argument made to the magistrate judge, a district court need only review that aspect of a report-recommendation for clear error. See DiPilato v. 7-Eleven, Inc., 662 F. Supp. 2d 333, 339 (S.D.N.Y. 2009) ("The district court may adopt those portions of a report and recommendation to which no timely objections have been made, provided no clear error is apparent from the face of the record."); New York City Dist. Couns. of Carpenters Pension Fund v. Forde, 341 F. Supp. 3d 334, 336 (S.D.N.Y. 2018) ("When a party makes only conclusory or general objections, or simply reiterates the original arguments, the Court will review the [report and recommendation] strictly for clear error." (quoting Molefe v. KLM Royal Dutch Airlines, 602 F. Supp. 2d 485, 487 (S.D.N.Y. 2009))). Clear error "is present when upon review of the entire record, the court is left with the definite and firm conviction that a mistake has been committed." Rivera v. Federal Bureau of Prisons, 368 F. Supp. 3d 741, 744 (S.D.N.Y. 2019). Additionally, a district court will ordinarily refuse to consider an argument that could have been, but was not, presented to the magistrate judge in the first instance. See Hubbard v. Kelley, 752 F. Supp. 2d 311, 312–13 (W.D.N.Y. 2009) ("In this circuit, it is established law that a district judge will not consider new arguments raised in objections to a magistrate judge's report and recommendation that could have been raised before the magistrate but were not.").

Rule 56 of the Federal Rules of Civil Procedure instructs courts to grant summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law," and a dispute is " 'genuine' ... if the evidence is such that a reasonable jury could return a verdict for the nonmoving part." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Thus, while "[f]actual disputes that are irrelevant or unnecessary" will not preclude summary judgment, "summary judgment will not lie if ... the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.; see also Taggart v. Time, Inc., 924 F.2d 43, 46 (2d Cir. 1991) ("Only when no reasonable trier of fact could find in favor of the nonmoving party should summary judgment be granted.").

The party seeking summary judgment bears the burden of informing a court of the basis for the motion and identifying those portions of the record that the moving party claims will demonstrate the absence of a genuine dispute of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

In attempting to defeat a motion for summary judgment after the moving party has met its initial burden, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts," Matsushita Elec. Indus. Co.

Hudson v. Kirkey, Not Reported in Fed. Supp. (2023)
Case 9:23-cv-01142-LEK-TWD    Document 35    Filed 02/13/25    Page 25 of 54
2023 WL 2324988

v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The nonmoving party may not rely on mere conclusory allegations, speculation or conjecture, see Fischer v. Forrest, 968 F.3d 216, 221 (2d Cir. 2020), and must present more than a mere "scintilla of evidence" supporting its claims, Anderson, 477 U.S. at 252, 106 S.Ct. 2505. At the same time, a court must resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party, see Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000), and must "eschew credibility assessments[,]" Amnesty Am. v. Town of W. Hartford, 361 F.3d 113, 122 (2d Cir. 2004) (quoting Weyant v. Okst, 101 F.3d 845, 854 (2d Cir. 1996)). Thus, a court's duty in reviewing a motion for summary judgment is "carefully limited" to finding genuine disputes of fact, "not to deciding them." Gallo v. Prudential Residential Servs., Ltd. P'ship, 22 F.3d 1219, 1224 (2d Cir. 1994).

## IV. DISCUSSION

Objections were timely filed with respect to the Report-Recommendation. See Docket. Defendants contend that Judge Stewart erred because he overlooked evidence showing that Plaintiff failed to exhaust his administrative remedies by not undertaking reasonable efforts to appeal his grievance to the superintendent level. Obj. at 2. Before addressing these arguments, the Court will discuss the relevant provisions of the PLRA and the grievance process in New York State prisons.

 *3  The PLRA provides: "No action shall be brought with respect to prison conditions under section 1983 ... or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Johnson v. Killian, 680 F.3d 234, 238 (2d Cir. 2012) (quoting Porter v. Nussle, 534 U.S. 516, 532, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002)). "[T]he PLRA exhaustion requirement requires proper exhaustion." Woodford v. Ngo, 548 U.S. 81, 93, 126 S.Ct. 2378, 165 L.Ed.2d 368 (2006). In other words, "prisoners must complete the administrative review process in accordance with the applicable procedural rules—rules that are defined not by the PLRA, but by the prison grievance process itself." Killian, 680 F.3d at 238 (quoting Jones v. Bock, 549 U.S. 199, 218, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007)).

Nevertheless, the PLRA "contains its own textual exception to mandatory exhaustion. Under § 1997e(a), the exhaustion requirement hinges on the availab[ility] of administrative remedies." Ross v. Blake, 578 U.S. 632, 642, 136 S.Ct. 1850, 195 L.Ed.2d 117 (2016) (quotations omitted). The Supreme Court has identified three scenarios in which an administrative procedure may be deemed unavailable for purposes of PLRA exhaustion. First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." Id. at 643, 136 S.Ct. 1850 (citations omitted). Second, "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use. In this situation, some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it." Id. at 643–644, 136 S.Ct. 1850. Finally, "the same is true when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." Id. at 644, 136 S.Ct. 1850.

In New York State:

DOCCS has a well-established three-step Inmate Grievance Program ("IGP"). N.Y. Comp. Codes R. & Regs. tit. 7, § 701.5 (2013). Generally, the DOCCS IGP involves the following procedure for the filing of grievances. First, an inmate must file a complaint with the facility's IGP clerk within twenty-one calendar days of the alleged occurrence. Id. § 701.5(a). A representative of the facility's Inmate Grievance Resolution Committee ("IGRC") has sixteen calendar days from receipt of the grievance to informally resolve the issue. Id. § 701.5(b)(1). If there is no such informal resolution, the full IGRC conducts a hearing within sixteen calendar days of receipt of the grievance and issues a written decision within two working days of the conclusion of the hearing. Id. §§ 701.5(b)(2), (3).

Second, a grievant may appeal the IGRC decision to the facility's superintendent within seven calendar days of receipt of the IGRC's written decision. Id. § 701.5(c)(1). If the grievance involves an institutional issue (as opposed to a DOCCS-wide policy issue), the superintendent must issue a written decision within twenty calendar days of receipt of the grievant's appeal.

Hudson v. Kirkey, Not Reported in Fed. Supp. (2023)
2023 WL 2324988

Case 9:23-cv-01142-LEK-TWD    Document 35    Filed 02/13/25    Page 26 of 54

Id. § 701.5(c)(3)(ii). Grievances regarding DOCCS-wide policy issues are forwarded directly to the central office review committee ("CORC") for a decision under the process applicable to the third step. Id. § 701.5(c)(3)(i).

Third, a grievant may appeal to CORC within seven working days of receipt of the superintendent's written decision. Id. § 701.5(d)(1)(i). CORC is to render a written decision within thirty calendar days of receipt of the appeal. Id. § 701.5(d)(3)(ii).

Bryant v. Whitmore, No. 14-CV-1042, 2016 WL 7188127, at *4 (N.D.N.Y. Nov. 4, 2016), report and recommendation adopted, Bryant v. Thomas, 2016 WL 7187349 (N.D.N.Y. Dec. 9, 2016).

**\*4** Moreover, the Second Circuit has held that factual disputes concerning exhaustion under the PLRA must be determined by courts rather than juries. See Messa, 652 F.3d at 308–09 ("[Plaintiff] argues that, unlike other aspects of exhaustion, which he concedes are properly resolved by the court, determining whether an inmate asserts a valid excuse for non-exhaustion is a task for the jury. We are not persuaded."). Likewise, exhaustion is an affirmative defense, and the burden of proof at all times, remains on the defendant. See Ferguson v. Mason, No. 19-CV-927, 2021 WL 862070, at *3 (N.D.N.Y. Jan. 7, 2021), report and recommendation adopted, 2021 WL 531968 (N.D.N.Y. Feb. 12, 2021).

Here, Defendants object to Judge Stewart's conclusion that: "Defendant has not come forward with affirmative evidence on this Motion to establish that no grievance was filed. It is unclear why, if such evidence existed, it was not presented by Defendant." R. & R. at 6–7. Defendants argue that Judge Stewart erred because they contend that they have provided evidence showing that Plaintiff never filed grievances; they reference the evidence filed in their first motion for summary judgment to support this assertion. Obj. at 2–3. Defendants rely on Local Rule 7.1(b) which provides: "Documents that are on file with the Court in the same action should not be attached as exhibits to the motion papers, but rather should reference to the appropriate docket number." Obj. at 3 (citing L.R. 7.1(b)).

The Court agrees with Defendants that they have provided evidence for purposes of this motion. They need not re-file the same evidence pursuant to Local Rule 7.1(b). See Dkt. Nos 17-4; 17-8; 17-10. Nevertheless, the Court agrees with Judge Stewart's conclusion. As this Court has stated in a previous order, "this dispute essentially boils down to a clash of sworn statements." Hudson v. Kirkey, No. 20-CV-0581, 2021 WL 1966721, at *4 (N.D.N.Y. May 17, 2021) (Kahn, J.). Similar to the facts of the May 2021 Order, Plaintiff testified that he submitted multiple grievances that were never filed, Dkt. No. 49-1 ("Plaintiff's Deposition") at 110–12, while "Kirkey submitted sworn statements from inmate grievance program supervisors indicating that a review of their records revealed that no grievance was filed." Hudson, 2021 WL 1966721, at *4. However, the Court cannot resolve the action in favor of Defendants because the Court is not convinced that Defendants have satisfied their burden of proof. As this Court noted: "To the extent that these statements are in contradiction, the Court cannot resolve this contradiction at the summary judgment stage, because this Court is prohibited from making credibility determinations." Id. As another court in this District explained:

> [T]he defendant bears the burden of proving that the administrative remedies available to the plaintiff were not exhausted prior to the initiation of a civil action. However, once a defendant has produced reliable evidence that such remedies were generally available, and the plaintiff nevertheless filed to exhaust those remedies, the plaintiff must then counter the defendant's proof by showing that, as to him, or her, the remedy was unavailable. As a result, practically speaking, while the burden on this affirmative defense remains all times on the defendant, the plaintiff may sometimes have to adduce evidence in order to defeat it.

Coleman v. Nolan, No. 15-CV-40, 2018 WL 4732778, at *4 (N.D.N.Y. Oct. 2, 2018) (internal citations and quotations omitted).

Case 9:23-cv-01142-LEK-TWD    Document 35    Filed 02/13/25    Page 27 of 54

Hudson v. Kirkey, Not Reported in Fed. Supp. (2023)
2023 WL 2324988

**\*5**  Moreover, the framework described above "does not require a greater evidentiary showing from Plaintiff than would otherwise be required during summary judgment." Hudson, 2021 WL 1966721, at \*4 (citations omitted). "A presumption's only effect is to require the party contesting it to produce enough evidence substantiating the presumed fact's absence to withstand a motion for summary judgment." Id. Thus, as this Court explained, "once Kirkey introduced evidence that there was a functional grievance system [via Dkt. No. 17], Plaintiff could not have survived summary judgment by simply pointing to Kirkey's failure to introduce evidence that this process was specifically available to Plaintiff. Rather in order to make the presumption of availability 'vanish,' Plaintiff had to produce competent evidence supporting unavailability. Id. (citing McLean v. LaClair, No. 19-CV-1227, 2021 WL 671650, at \*8 (N.D.N.Y. Feb. 22, 2021)).

Like the Court found in the May 2021 Order, Plaintiff *has* submitted evidence supporting unavailability of administrative remedies. Plaintiff testified that he attempted to submit grievances twice, Pl.'s Dep. at 110–12, and then testified that after he inquired with prison officials about his grievances he was told, "you waited too many days to file again." Id. at 112. As a result, drawing all inferences in favor of Plaintiff, the record shows that he attempted to file his grievance twice and when he followed up, he was told he could not re-file because he "waited too many days to file again...." Id. And because "a sworn statement [or deposition] based upon personal knowledge is sufficient when opposed only by a movant's conflicting sworn statement ... Plaintiff's evidence is sufficient" to defeat summary judgment at this stage in the litigation. Hudson, 2021 WL 1966721, at \*4 (citations omitted).

Likewise, "the ... statements from each side are not necessarily inconsistent. Since the Court is required to draw reasonable inferences in Plaintiff's favor, the Court must infer that the grievance was never filed because prison authorities did not file it, not because Plaintiff did not submit it." Id. (citations omitted). See also Zulu v. Barnhart, No. 16-CV-1408, 2019 WL 2997226, at \*13, (N.D.N.Y. Apr. 22, 2019) report and recommendation adopted, No. 16-CV-1408, 2019 WL 2150628, (N.D.N.Y. May 17, 2019) ("Defendants' evidence is largely consistent with plaintiff's claim that ... the timely grievances that he attempted to submit while confined to the SHU at Marcy were not filed. The absence of any official records of plaintiff's initial attempts to grieve the incident comports with plaintiff's assertions that once he handed a grievance through the feed-up hatch in the SHU, it was out of his possession and it was not filed.").

Accordingly, Kirkey has failed to carry his burden of proof that no disputes of material fact exist regarding whether the grievance process was available to Plaintiff due to potential "machinations or misrepresentations of prison officials who inhibited the filing of Plaintiff's submissions." McLean, 2021 WL 671650, at \*9. Thus, "[i]n order to determine whether Plaintiff properly exhausted administrative remedies, the Court must hold a hearing, at which a fact-finder can assess the credibility of witnesses and the relative weight of the evidence and parties presented." Hudson, 2021 WL 1966721, at 4.[1] See also McLean v. LaClair, No. 10-CV-1227, 2021 WL 671650, at \*9 (N.D.N.Y. Feb. 22, 2021) (Kahn, J.) (ordering an exhaustion hearing on a similar PLRA affirmative defense to assess the credibility of witnesses and evidence). As a result, holding an exhaustion hearing pursuant to Messa v. Goord before Judge Stewart is the most appropriate action.

[1]    Kirkey also argues that Plaintiff never filed an appeal, and thus failed to exhaust his remedies. See Mot. at 7. However, Kirkey already made this argument to Judge Stewart. Mot. at 9. Thus, the Court will not relitigate this argument de novo. See Forde, 341 F. Supp. 3d at 346 ("When a party makes only conclusory or general objections, or *simply reiterates the original arguments*, the Court will review the [report and recommendation] strictly for clear error.") (emphasis added). Even assuming *arguendo* that the Court reviewed this portion de novo, the Court has already found that Kirkey failed to demonstrate an absence of material fact regarding whether administrative remedies were available. Gill v. Frawley, No. 02-CV-1380, 2006 WL 1742738, 2006 U.S. Dist. LEXIS 101694 at \*44 (N.D.N.Y. May 9, 2006) (noting that "[s]ome courts have suggested that an inmate has exercised a reasonable effort to exhaust his administrative remedies when he has tried to properly file a grievance and that grievance has been lost or destroyed by a prison official," and collecting cases). As a result, an exhaustion hearing is required. See Woodward v. Lytle, No. 16-CV-1174, 2019 WL 2527342, at \*1 (N.D.N.Y. May 24, 2019), report and recommendation adopted, 2019 WL 2524756 (N.D.N.Y June 19, 2019) (opting to issue a decision on exhaustion subsequent to a hearing).

**\*6**  Neither party filed objections to the remaining portions of the Report-Recommendation when they were due pursuant to Fed. R. Civ. P. 6(d) and 6(a)(1)(C). See generally Docket. Consequently, the Court reviews the rest of the Report-Recommendation for clear error and finds none. Therefore, the Court adopts the Report-Recommendation with the modification regarding exhaustion.

**V. CONCLUSION**

Accordingly, it is hereby:

**ORDERED**, that the Report-Recommendation (Dkt. No. 55) is **APPROVED and ADOPTED** with the modification that Magistrate Judge Stewart resolve the exhaustion issues concerning Plaintiff's excessive force claim against Kirkey through a hearing; and it is further

**ORDERED**, that Defendants' motion for summary judgment (Dkt. No. 49) is **GRANTED in part** and **DENIED in part**; and it is further

**ORDERED**, that Defendants' motion for summary judgment (Dkt. No. 49) is **GRANTED** with respect to all claims against the unidentified John Doe and Jane Doe defendants; and it is further

**ORDERED**, that the Clerk terminate the John Doe and Jane Doe Defendants from this action; and it is further

**ORDERED**, that Defendant's motion for summary judgment (Dkt. No. 49) is **DENIED** with respect to Plaintiff's Eighth Amendment excessive force claim against Kirkey; and it is further

**ORDERED**, that this matter is **REFERRED BACK** to Magistrate Judge Stewart to facilitate resolution of the genuine disputes of material fact surrounding Plaintiff's exhaustion of his administrative remedies, including holding an exhaustion hearing concerning his excessive force claim against Kirkey; and it is further

**ORDERED**, that the Clerk serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2023 WL 2324988

---

**End of Document**                                              © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Smith v. Jaynes, Not Reported in Fed. Supp. (2020)

2020 WL 1149856

2020 WL 1149856
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Charles J. SMITH, Plaintiff,

v.

JAYNES, Corrections Officer, Defendant.

9:18-CV-1107 (DNH/DJS)
|
Signed 02/04/2020

**Attorneys and Law Firms**

CHARLES J. SMITH, Plaintiff, Pro Se, 96-A-6765, Greene Correctional Facility, P.O. Box 975, Coxsackie, NY 12051.

HON. LETITIA JAMES, OF COUNSEL: RICHARD C. WHITE, ESQ., Assistant Attorney General, Attorney General of the State of New York, Attorney for Defendants, The Capitol, Albany, NY 12224.

## REPORT-RECOMMENDATION and ORDER

DANIEL J. STEWART, United States Magistrate Judge

**\*1** *Pro se* Plaintiff Charles Smith brought this civil rights action, alleging violations of his constitutional rights pursuant to 42 U.S.C. § 1983, as well as state law negligence claims while he was in the custody of the Department of Corrections and Community Supervision ("DOCCS") at Cayuga Correctional Facility ("Cayuga"). *See* Dkt. No. 14, Am. Compl. On initial review of the Amended Complaint pursuant to 28 U.S.C. §§ 1915(e) and 1915A, the District Court dismissed a number of Plaintiff's claims, allowing only Plaintiff's First Amendment retaliation claim against Defendant Jaynes to proceed. Dkt. No. 16. Defendant has now filed a Motion for Summary Judgment, seeking to dismiss the Amended Complaint on the basis that Plaintiff failed to exhaust his administrative remedies before filing this action. Dkt. No. 49. Plaintiff has filed an opposition, *see* Dkt. Nos. 52 & 53; [1] Defendant has filed a reply, *see* Dkt. No. 55; and Plaintiff has filed a sur-reply, *see* Dkt. No. 56.

---

[1]   In his "notice of motion," Plaintiff includes a request to "allow amendment of the presently amended complaint for purpose of clarifying claims which already states a cause of action." Dkt. No. 52 at p. 1. Plaintiff makes no further mention of any request to amend his complaint in his submissions to the Court, and it is unclear to the Court what, if any, specific request Plaintiff may have intended to make. Should this matter proceed following a decision on Defendant's Motion, Plaintiff may revisit the issue of making a motion to amend his Amended Complaint.

For the reasons that follow, the Court recommends Defendant's Motion be denied without prejudice to renew.

## I. BACKGROUND

Plaintiff filed the present civil rights Amended Complaint alleging wrongdoing that occurred while he was incarcerated at Cayuga in the custody of DOCCS. The Amended Complaint alleges that on July 19, 2018, Defendant gave Plaintiff a direct order preventing him from leaving the messhall for the law library, thereby hindering Plaintiff's legal work. Am. Compl. at pp. 16-17. Plaintiff requested to speak with the area supervisor, and in response Defendant had Plaintiff escorted to the Special Housing Unit ("SHU"), and he then issued Plaintiff a false misbehavior report. *Id.* at pp. 17, 19. Corrections Officers moved

Smith v. Jaynes, Not Reported in Fed. Supp. (2020)
Case 9:23-cv-01142-LEK-TWD    Document 35    Filed 02/13/25    Page 30 of 54
2020 WL 1149856

Plaintiff's personal property to the SHU, and on July 22, 2018, Plaintiff examined his property and noticed that certain items were not present. *Id.* at p. 14. Plaintiff's only claim that remains in this case is a First Amendment retaliation claim alleging that Defendant issued a false misbehavior report in retaliation for Plaintiff's request to speak with a sergeant regarding Defendant's direct order and for Plaintiff's filing of a lawsuit against another corrections official from Cayuga. *Id.* at pp. 15-17 & 19.

Plaintiff filed two grievances regarding the transfer of his property and the allegedly missing items. Dkt. No. 49-2, Swan Decl., [2] ¶¶ 16 & 17, Exs. B & C. He also alleges that he submitted a separate grievance regarding Defendant's retaliation which was never filed. *See* Dkt. No. 52-1 at ¶ 20.

[2]   Plaintiff takes issue with the Swan Declaration because Swan did not begin his current job until the month of the underlying events, and therefore may not have held that position at the relevant time. Dkt. No. 52-1 at ¶¶ 12-14. Mr. Swan's declaration is based on his review of records, however, not on his personally having witnessed the events at issue in this case. To the extent Plaintiff takes issue with the declaration being made pursuant to 28 U.S.C. § 1746, such a declaration is acceptable. 28 U.S.C. § 1746; *see LeBoeuf, Lamb, Green & MacRae, L.L.P. v. Worsham*, 185 F.3d 61, 65-66 (2d Cir. 1999).

## II. LEGAL STANDARD FOR SUMMARY JUDGMENT

**\*2**  Pursuant to Federal Rule of Civil Procedure 56(a), summary judgment is appropriate only where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party bears the burden to demonstrate through "pleadings, depositions, answers to interrogatories, and admissions on file, together with [ ] affidavits, if any," that there is no genuine issue of material fact. *F.D.I.C. v. Giammettei*, 34 F.3d 51, 54 (2d Cir. 1994) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

To defeat a motion for summary judgment, the non-movant must set out specific facts showing that there is a genuine issue for trial and cannot rest merely on allegations or denials of the facts submitted by the movant. FED. R. CIV. P. 56(c); *see also Scott v. Coughlin*, 344 F.3d 282, 287 (2d Cir. 2003) ("Conclusory allegations or denials are ordinarily not sufficient to defeat a motion for summary judgment when the moving party has set out a documentary case."); *Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 525-26 (2d Cir. 1994). To that end, sworn statements are "more than mere conclusory allegations subject to disregard ... they are specific and detailed allegations of fact, made under penalty of perjury, and should be treated as evidence in deciding a summary judgment motion" and the credibility of such statements is better left to a trier of fact. *Scott v. Coughlin,* 344 F.3d at 289 (citing *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983) and *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995)).

When considering a motion for summary judgment, the court must resolve all ambiguities and draw all reasonable inferences in favor of the non-movant. *Nora Beverages, Inc. v. Perrier Group of Am., Inc.*, 164 F.3d 736, 742 (2d Cir. 1998). "[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994). Furthermore, where a party is proceeding *pro se*, the court must "read [his or her] supporting papers liberally, and ... interpret them to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994); *see also Soto v. Walker*, 44 F.3d 169, 173 (2d Cir. 1995). Nonetheless, summary judgment is appropriate "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"[S]ummary judgment should only be granted [i]f *after discovery,* the nonmoving party has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof. The nonmoving party must have had the opportunity to discover information that is essential to his opposition to the motion for summary judgment. Only in the rarest of

cases may summary judgment be granted against a plaintiff who has not been afforded the opportunity to conduct discovery." *Hellstrom v. U.S. Dep't of Veterans Affairs*, 201 F.3d 94, 97 (2d Cir. 2000) (internal quotation marks and citations omitted).

# III. DISCUSSION

## A. Exhaustion Procedure

The Prison Litigation Reform Act ("PLRA") provides, in pertinent part, that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The Supreme Court has held that "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002) (citation omitted). Exhaustion in prisoner cases covered by § 1997e(a) is mandatory. *Id.* at 524; *Ross v. Blake*, 136 S. Ct. 1850, 1856 (2016) (stating that the mandatory language of § 1997e(a) forecloses judicial discretion to craft exceptions to the requirement). Furthermore, § 1997e(a) requires "proper exhaustion," which means using all steps of the administrative process and complying with "deadlines and other critical procedural rules." *Woodford v. Ngo*, 548 U.S. 81, 93 (2006). The defendant bears the burden of proving that the administrative remedies available to the plaintiff were not exhausted prior to the initiation of a civil action. *Howard v. Goord*, 1999 WL 1288679, at *3 (E.D.N.Y. Dec. 28, 1999).

**\*3** In New York, the administrative remedies consist of a three-step Inmate Grievance Program ("IGP"). First, a grievance is submitted to the Inmate Grievance Resolution Committee ("IGRC"), a committee comprised of both inmates and facility employees. N.Y. COMP. CODES R. & REGS. tit. 7, § 701.5(b). An inmate must submit a grievance "within 21 calendar days of the alleged occurrence." *Id.* at § 701.5(a). An inmate may request an extension of the time limit within forty-five days of the date of the alleged occurrence. *Id.* at § 701.6(g). The IGRC reviews and investigates the formal complaint and then issues a written determination. *Id.* at § 701.5(b). Second, upon appeal of the IGRC decision, the superintendent of the facility reviews the IGRC's determination and issues a decision. *Id.* at § 701.5(c). Finally, upon appeal of the superintendent's decision, the Central Office Review Committee ("CORC") makes the final administrative determination. *Id.* at § 701.5(d). Only upon exhaustion of all three levels of review may a prisoner seek relief in federal court. *Bridgeforth v. Bartlett*, 686 F. Supp. 2d 238, 239 (W.D.N.Y. 2010) (citing, *inter alia, Porter v. Nussle*, 534 U.S. at 524); *see also Neal v. Goord*, 267 F.3d 116, 121 (2d Cir. 2001), *overruled on other grounds by Porter v. Nussle*, 534 U.S. 516.

An expedited procedure exists for grievances regarding alleged harassment; this procedure also requires that the grievant receive a response from CORC in order to exhaust. 7 N.Y.C.R.R. § 701.8. Pursuant to this expedited procedure, the inmate may first report the incident to the employee's immediate supervisor. *Id.* at § 701.8(a). The inmate's allegations are then given a grievance number and the superintendent (or his designee) must promptly decide whether the grievance, if true, would represent a bona fide case of harassment. *Id.* at §§ 701.8(b) & (c).

## B. Whether Plaintiff Exhausted His Administrative Remedies

Defendant contends that Plaintiff did not exhaust his administrative remedies as to his remaining claim. Defendant asserts that Plaintiff did not file any grievances regarding the alleged retaliation. Dkt. No. 49-1, Def.'s Mem. of Law, pp. 7-10. In particular, he points out that Plaintiff filed a grievance on the date he alleges Defendant retaliated against him, but that grievance does not mention Defendant or contain any allegations pertaining to that alleged retaliation; rather, it deals with how Plaintiff's personal property was handled when he was transferred to SHU. *Id.* at p. 7. Plaintiff filed another grievance on July 23, 2018 that also dealt with his personal property. *Id.* This grievance was consolidated with Plaintiff's July 19 grievance, into one grievance. *Id.* at pp. 7-8.

Smith v. Jaynes, Not Reported in Fed. Supp. (2020)
Case 9:23-cv-01142-LEK-TWD    Document 35    Filed 02/13/25    Page 32 of 54
2020 WL 1149856

Plaintiff filed four grievances while he was at Cayuga. Swan Decl. at ¶¶ 15-19, Exs. A-D. The first was filed in May of 2018, before the events at issue allegedly occurred. *See* Swan Decl., Ex. A. Plaintiff also filed a grievance on August 14, 2018, alleging that the law library had failed to process some of his requests, which does not relate to the subject of this lawsuit. *Id.*, Ex. D. Plaintiff concedes that the July 19, 2018 grievance on file does not relate to the remaining claim in this case. Dkt. No. 52-1 at ¶ 20. He alleges that he filed an additional grievance that specifically pertained to Defendant's alleged retaliation, which was never filed. *Id.* Because the grievance that Plaintiff claims would be relevant was never filed, Plaintiff did not exhaust his administrative remedies regarding Defendant Jaynes' alleged retaliation.

Plaintiff also contends that he exhausted this issue by appealing his disciplinary determination. Dkt. No. 52-1 at ¶ 36. However, an appeal of the disciplinary process would not suffice to exhaust Plaintiff's retaliation claim against Defendant. "Though a disciplinary appeal is sufficient to exhaust a claim that Plaintiff was deprived of due process at a disciplinary hearing, 'allegations of staff misconduct related to the incidents giving rise to the discipline must be grieved.' " *Barker v. Smith*, 2017 WL 3701495, at *3 (S.D.N.Y. Aug. 25, 2017) (citations omitted). "Where the inmate is asserting both retaliation claims and procedural due process claims, he must separately exhaust both types of claim, using the procedure appropriate to each type of claim." *Johnson v. Fraizer*, 2016 WL 7012961, at *4 (W.D.N.Y. Dec. 1, 2016) (citations omitted); *see also Mateo v. Gundrum*, 2013 WL 5454722, at *8 (N.D.N.Y. Sept. 30, 2013) ("An inmate claiming that a disciplinary procedure has been instituted or unfairly conducted as the result of retaliatory motives must [ ] follow the IGP three-step process rather than the disciplinary hearing appeal process in order to properly exhaust administrative remedies."). Plaintiff's claim against Defendant Jaynes is that he retaliated against him by writing a false misbehavior report; as such Plaintiff was required to follow the three-step grievance process in order to exhaust his remedies. The Court recommends finding that Plaintiff did not exhaust his administrative remedies.

### C. Whether Plaintiff's Failure to Exhaust May be Excused

 **\*4**  A prisoner's failure to exhaust administrative remedies may nonetheless be excused if remedies were unavailable to the inmate. *Ross v. Blake*, 136 S. Ct. at 1858. As the Supreme Court stated in Ross, "[a]n inmate ... must exhaust available remedies, but need not exhaust unavailable ones." *Id.* The Court provided three potential circumstances in which administrative remedies may be unavailable: (1) where the administrative procedure technically exists but operates as a "dead end – with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) where the administrative scheme is "so opaque that it becomes, practically speaking, incapable of use"; and (3) where prison administrators "thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 1859-60.

Plaintiff asserts many reasons why he should be excused from the exhaustion requirement. Primarily, he argues that administrative remedies were unavailable to him because: (1) he submitted a relevant grievance, and believed that it had been consolidated with the two grievances that had been successfully filed and consolidated in July; (2) he was misled by a corrections officer who told him that he had to exhaust the issue through appealing the disciplinary process; and (3) he submitted a relevant grievance, but staff at Cayuga failed to file it.

Initially, Plaintiff contends that he filed a grievance regarding his claim, and that he believed it was consolidated with the two other July, 2018 grievances which had been consolidated. Dkt. No. 52-1 at ¶ 26. However, Plaintiff appealed that consolidated grievance twice, and although in his appeals he discussed the content of the other grievances, he never mentioned anything pertaining to Defendant Jaynes's alleged retaliation. *See* Dkt. No. 52-2 at p. 5. Plaintiff also states that he has not received a response from his appeal of the consolidated grievances to CORC. Dkt. No. 52-1 at p. 8, note 12. Therefore, even if the third grievance Plaintiff describes had been included in the consolidated grievance, he would not have exhausted his administrative remedies. *See Brown v. Dubois*, 2018 WL 2078823, at *1 (N.D.N.Y. Apr. 10, 2018) ("Included within the IGP's exhaustion requirement is the prerequisite that the inmate must file an appeal with the [CORC] and receive a response from the CORC before filing a federal lawsuit.").

Smith v. Jaynes, Not Reported in Fed. Supp. (2020)
2020 WL 1149856

Case 9:23-cv-01142-LEK-TWD    Document 35    Filed 02/13/25    Page 33 of 54

"Only in the rarest of cases may summary judgment be granted against a plaintiff who has not been afforded the opportunity to conduct discovery." *Hellstrom v. U.S. Dep't of Veterans Affairs*, 201 F.3d at 97; *see also Roebuck v. Hudson Valley Farms, Inc.*, 208 F.R.D. 34, 36 (N.D.N.Y. 2002) (finding summary judgment premature where plaintiff had not yet been afforded opportunity to conduct relevant discovery). Here, the record is at best incomplete as to Plaintiff's remaining arguments and could be made clearer following full discovery such that denial of the Motion at this time is appropriate.

Plaintiff makes two additional arguments suggesting that his failure to exhaust should be excused. First, he contends that he was misled by an officer who advised him that the issue had to be handled through the disciplinary process. Dkt. No. 52-1 at ¶ 39. Second, Plaintiff contends that he actually did submit a grievance regarding the claim in this case, and describes the grievance's content, as well as the date and manner in which he submitted it. Dkt. No. 52-1 at ¶ 20. Plaintiff alleges that this grievance was lost or disregarded; he explains that inmates in SHU are unable to submit grievances themselves, and have to depend on staff making rounds, and so he totally lacked control over the process. *Id.* at ¶¶ 17 & 21.

These matters present distinct questions of fact that cannot be resolved here. While the Court has the ability to order an exhaustion hearing, *see Messa v. Goord*, 652 F.3d 305, 309 (2d Cir. 2011), doing so here without the benefit of discovery would not be the most efficient manner in which to resolve the factual disputes presented here. Rather, the Court recommends that the Motion for Summary Judgment be denied as premature. [3]

[3]    A motion filed after discovery would present both a more complete record regarding exhaustion, including with regard to Plaintiff's asserted basis for excusing his apparent failure to exhaust and, should the parties desire, the merits of Plaintiff's sole remaining claim.

## IV. CONCLUSION

**\*5**  **WHEREFORE**, it is hereby

**RECOMMENDED**, that Defendant's Motion for Summary Judgment (Dkt. No. 49) be **DENIED** without prejudice to renew; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) [4] days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a).

[4]    If you are proceeding *pro se* and are served with this Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the order was mailed to you to serve and file objections. FED. R. CIV. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. FED. R. CIV. P. 6(a) (1)(C).

## All Citations

Not Reported in Fed. Supp., 2020 WL 1149856

---

End of Document                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Smith v. Jaynes, Not Reported in Fed. Supp. (2020)

Case 9:23-cv-01142-LEK-TWD    Document 35    Filed 02/13/25    Page 34 of 54

2020 WL 1140665

2020 WL 1140665
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Charles J. SMITH, Plaintiff,

v.

JAYNES, Corrections Officer, Defendant.

9:18-CV-1107 (DNH/DJS)
|
Signed 03/09/2020

**Attorneys and Law Firms**

CHARLES J. SMITH, Plaintiff pro se, 96-A-6765, Greene Correctional Facility, P.O. Box 975, Coxsackie, NY 12051.

HON. LETITIA JAMES, Attorney General for the State of New York, OF COUNSEL: ERIK BOULE PINSONNAULT, ESQ., Ass't Attorney General, Attorney for Defendant, The Capitol, Albany, NY 12224.

## DECISION and ORDER

DAVID N. HURD, United States District Judge

 **\*1**  Pro se plaintiff Charles J. Smith brought this civil rights action pursuant to 42 U.S.C. § 1983. On February 4, 2020, the Honorable Daniel J. Stewart, United States Magistrate Judge, advised by Report-Recommendation that defendant's motion for summary judgment in lieu of answer be denied without prejudice. Plaintiff timely filed objections to the Report-Recommendation.

Based upon a de novo review of the portions of the Report-Recommendation to which plaintiff objected, the Report-Recommendation is accepted and adopted in all respects. See 28 U.S.C. § 636(b)(1).

Therefore, it is

ORDERED that

1. Defendant's motion for summary judgment in lieu of answer is DENIED WITHOUT PREJUDICE; and

2. Defendant is directed to answer the sole First Amendment retaliation claim in plaintiff's Complaint within twenty (20) days of the date of this Decision and Order.

IT IS SO ORDERED.

## All Citations

Not Reported in Fed. Supp., 2020 WL 1140665

End of Document                                  © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Tillman v. Phillips, Not Reported in Fed. Supp. (2021)

2021 WL 5233308

Case 9:23-cv-01142-LEK-TWD    Document 35    Filed 02/13/25    Page 35 of 54

2021 WL 5233308
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

K'var TILLMAN, Plaintiff,

v.

Trevor PHILLIPS, et al., Defendants.

No. 9:19-CV-1597 (LEK/CFH)

|

Signed 11/10/2021

**Attorneys and Law Firms**

K'VAR TILLMAN, 37 N. Brandywine Ave., Schenectady, New York 12307, Plaintiff pro se.

OF COUNSEL: DAVID C. WHITE, ESQ., Assistant Attorney General, Attorney General for the State of New York, The Capitol, Albany, New York 12224, Attorneys for defendant(s).

## REPORT-RECOMMENDATION AND ORDER [1]

[1]    This matter was referred to the undersigned for Report-Recommendation and Order pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

CHRISTIAN F. HUMMEL, UNITED STATES MAGISTRATE JUDGE

 *1  Plaintiff pro se K'var Tillman ("plaintiff"), who was at all relevant times in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS"), brings this action pursuant to 42 U.S.C. § 1983, alleging that defendants Sergeant ("Sgt.") Trevor Phillips ("Phillips"), Sgt. Timothy Clark ("T. Clark"), Sgt. Michael Clark ("M. Clark"), Correction Officer ("C.O.") J. Sorensen ("Sorensen"), C.O. Danny Putnam [2] ("D. Putnam"), and C.O. John Putnam [3] ("J. Putnam") (collectively, "defendants") violated his constitutional rights under the Eighth Amendment; and that defendant Phillips violated his constitutional rights under the Fourteenth Amendment. See Dkt. No. 1 ("Compl."). Presently before the Court is defendants' Motion for Summary Judgment brought pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 56. See Dkt. No. 26-1. Plaintiff filed a response. See Dkt. No. 28. Defendants filed a reply. See Dkt. No. 29. For the following reasons, it is recommended that defendants' motion be denied.

[2]    The docket reflects defendant's last name as "Putman." However, the parties' use the spelling "Putnam." See Dkt. No. 1 ("Compl.") at 3; Dkt. No. 26-1 at 3. The clerk of court is directed to update the docket to reflect the appropriate spelling of defendant Putnam's last name.

[3]    In plaintiff's complaint, he refers to defendant as "John Putman" and "D.J. Putman." See Compl. at 3, 5. Defendants, however, consistently refer to defendant as "Jonathan Putnam." See Dkt. 26-1 at 3; Dkt. No. 26-2 at 1. As such, the Court will use defendants' spelling, and the clerk of court is directed to update the docket.

## I. Background

Case 9:23-cv-01142-LEK-TWD    Document 35    Filed 02/13/25    Page 36 of 54
Tillman v. Phillips, Not Reported in Fed. Supp. (2021)
2021 WL 5233308

On review of defendants' Motion for Summary Judgment, the facts will be related herein in the light most favorable to plaintiff as the nonmoving party. See Rattner v. Netburn, 930 F.2d 204, 209 (2d Cir. 1991) ("In assessing the record ... to determine whether there is a genuine issue as to any material fact, the court is required to resolve all ambiguities and draw all factual inferences in favor of the party against whom summary judgment is sought.").

### A. Plaintiff's Factual Assertions [4]

[4]  To the extent that plaintiff's exhibits are relevant to the causes of action at issue on the present motion, the Court will consider them as part of the complaint. See Sira v. Morton, 380 F.3d 57, 67 (2d Cir. 2004) ("A complaint is deemed to include any written instrument attached to it as an exhibit, materials incorporated in it by reference, and documents that, although not incorporated by reference, are integral to the complaint.") (internal quotation marks and citations omitted).

On January 31, 2019, while plaintiff was housed at Watertown Correctional Facility ("Watertown"), he was assaulted by an unknown assailant. See Dkt. No. 1-1 at 1. Thereafter, D. Putnam ordered plaintiff to place his hands on the wall to frisk and check plaintiff for weapons. See id. at 2; Compl. at 6. Unprovoked, D. Putnam then punched plaintiff in his right ear, and plaintiff immediately fell to the ground. See Dkt. No. 1-1 at 2. While plaintiff was on the ground, defendants repeatedly pepper sprayed, punched, kicked, and choked him. See Compl. at 5. Phillips pulled out plaintiff's dread locks and yelled racial slurs. See id. The assault lasted for approximately fifteen to twenty minutes. See Dkt. No. 1-1 at 2.

*2  Following the incident on January 31, 2019, plaintiff was placed in the special housing unit ("SHU") [5] for 270 days and was under contraband watch for twenty-one days. See Compl. at 2, 6; Dkt. No. 1-1 at 3. On March 14, 2019, plaintiff was transferred from Watertown to Downstate Correctional Facility ("Downstate"). See Dkt. No. 26-9 at 9. The same day, plaintiff was in transit from Downstate to Fishkill Correctional Facility ("Fishkill"). See id. On March 15, 2019, plaintiff was transferred from Fishkill to Upstate Correctional Facility ("Upstate"), where he remained until November 2019. See id.

[5]  SHUs exist in all maximum and certain medium security facilities. The units "consist of single- or double-occupancy cells grouped so as to provide separation from the general population...." N.Y. COMP. CODES R. & REGS. ("7 N.Y.C.R.R.") § 300.2(b). Inmates are confined in a SHU as discipline, pending resolution of misconduct charges, for administrative or security reason, or in other circumstances as required. See id. at pt. 301.

In a letter dated March 20, 2019, addressed "To: Grievance[,]" plaintiff states that he "filed a grievance at Watertown Corr. Facility, on approximately 2/19/19, in which [he] ha[s] not received a response or a notice that the grievance was ever received." Dkt. No. 1-1 at 4. [6]

[6]  Plaintiff does not provide the Court with copies of other grievances or letters beyond the March 20, 2019, letter.

### II. Legal Standards [7]

[7]  All unpublished decisions cited in this Report-Recommendation and Order, unless otherwise noted, have been provided to plaintiff.

### A. Summary Judgment Standard

Under Fed. R. Civ. P. 56(a), summary judgment may be granted only if all the submissions taken together "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). The moving party

Case 9:23-cv-01142-LEK-TWD    Document 35    Filed 02/13/25    Page 37 of 54

Tillman v. Phillips, Not Reported in Fed. Supp. (2021)

2021 WL 5233308

has the burden of showing the absence of a genuine dispute of material fact by providing the Court with portions of "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which support the motion. Celotex, 477 U.S. at 322; see FED. R. CIV. P. 56(c). A fact is material if it "might affect the outcome of the suit," as determined by the governing substantive law; a "dispute about a material fact is 'genuine' ... if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248.

If the moving party meets this burden, the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 248, 250; see Wright v. Goord, 554 F.3d 255, 266 (2d Cir. 2009). "When ruling on a summary judgment motion, the district court must construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." Dallas Aerospace, Inc. v. CIS Air Corp., 352 F.3d 775, 780 (2d Cir. 2003). Still, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts," Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986), and cannot rely on "mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." Knight v. U.S. Fire Ins. Co., 804 F.2d 9, 12 (2d Cir. 1986) (citing Quarles v. Gen. Motors Corp. (Motors Holding Div.), 758 F.2d 839, 840 (2d Cir. 1985) (per curiam)). Furthermore, "mere conclusory allegations or denials ... cannot by themselves create a genuine issue of material fact where none would otherwise exist." Hicks v. Baines, 593 F.3d 159, 166 (2d Cir. 2010) (brackets omitted) (quoting Fletcher v. Atex, Inc., 68 F.3d 1451, 1456 (2d Cir. 1995)).

**\*3** Where, as here, a party seeks judgment against a pro se litigant, a court must afford the non-movant special solicitude. See Treistman v. Fed. Bureau of Prisons, 470 F.3d 471, 477 (2d Cir. 2006). As the Second Circuit stated,

> [t]here are many cases in which we have said that a pro se litigant is entitled to special solicitude, that a *pro se* litigant's submissions must be construed liberally, and that such submissions must be read to raise the strongest arguments that they suggest. At the same time, our cases have also indicated that we cannot read into *pro se* submissions claims that are not consistent with the *pro se* litigant's allegations, or arguments that the submissions themselves do not suggest, that we should not excuse frivolous or vexatious filings by *pro se* litigants, and that *pro se* status does not exempt a party from compliance with relevant rules of procedural and substantive law....

Id. (internal quotation marks, citations, and footnote omitted); see also Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185, 191 (2d Cir. 2008) ("On occasions too numerous to count, we have reminded district courts that when [a] plaintiff proceeds *pro se*, ... a court is obligated to construe his pleadings liberally.") (internal quotation marks and citations omitted).

### A. Exhaustion

The Prison Litigation Reform Act ("PLRA") requires that a prisoner exhaust any administrative remedies available to him or her before bringing an action for claims arising out of his or her incarceration. See 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under section 1983 ... by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."). The exhaustion requirement applies "to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002). Exhaustion is required even where the prisoner seeks relief not available in the administrative grievance process, such as money damages. See id. at 524. "To exhaust administrative remedies, the inmate must complete the full administrative review process set forth in the rules applicable to the correctional facility in which he or she is incarcerated." Cuadrado v. Brueault, No. 9:14-CV-1293 (DNH/CFH), 2015 WL 1606178, at \*3 (N.D.N.Y. Apr. 8, 2015); see Jones v. Bock, 549 U.S. 199, 218 (2007). "Courts in [ ] this Circuit have long recognized [DOCCS'

Case 9:23-cv-01142-LEK-TWD    Document 35    Filed 02/13/25    Page 38 of 54
Tillman v. Phillips, Not Reported in Fed. Supp. (2021)
2021 WL 5233308

three-step] procedure as an 'available' remedy for purposes of the PLRA." [8] Hall v. Cnty. of Saratoga, No. 10-CV-1120 (NAM/CFH), 2013 WL 838284, at *1-2 (N.D.N.Y. Mar. 6, 2013).

[8]    DOCCS has a well-established administrative review process. See N.Y.C.R.R. § 701.1(a). First, an inmate must file a complaint with the Inmate Grievance Resolution Committee ("IGRC") within twenty-one calendar days of the alleged incident. See id. § 701.5(a). Second, an inmate may appeal IGRC's decision to the facility's Superintendent. See id. § 701.5(c)(1). Third, an inmate may appeal the Superintendent's decision to the Central Office Review Committee ("CORC"). See id. § 701.5(d)(1)(i). "There is also an expedited procedure for complaints raising bona fide issues of harassment or other misconduct by DOCCS staff, which bypasses the IGRC, and initially refers the grievance to the facility superintendent or his designee for prompt review, investigation, and decision." Ferguson v. Mason, No. 9:19-CV-927 (GLS/ATB), 2021 WL 862070, at *2 (N.D.N.Y. Jan. 7, 2021), report and recommendation adopted, 2021 WL 531968 (N.D.N.Y. Feb. 12, 2021) (citing 7 N.Y.C.R.R. § 701.8).

**\*4**  "Generally, if a plaintiff ... fails to follow each of the required steps prior to commencing an action, he has failed to exhaust his administrative remedies as required under the PLRA." Sanders v. St. Mary, No. 9:19-CV-1314 (BKS/TWD), 2021 WL 1575944, at *4 (N.D.N.Y. Apr. 22, 2021), report and recommendation adopted, 2021 WL 1999781 (N.D.N.Y. May 19, 2021); see also Ruggiero v. Cnty. of Orange, 467 F.3d 170, 176 (2d Cir. 2006) ("[T]he PLRA requires proper exhaustion, which means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits).") (quotation marks and citations omitted).

Although the Supreme Court of the United States has deemed exhaustion mandatory, the Second Circuit recognizes certain caveats. See Ruggiero, 467 F.3d at 175 (2d Cir. 2006). In 2016, the Supreme Court made clear that "[c]ourts may not engraft an unwritten 'special circumstances' exception onto the PLRA's exhaustion requirement." Ross v. Blake, 578 U.S. 632, 648 (2016). The Supreme Court determined that the PLRA's "exhaustion requirement hinges on the 'availab[ility]' of administrative remedies[.]" Id. at 642. " '[A]vailability' means 'an inmate is required to exhaust those, but only those, grievance procedures that are capable of use to obtain some relief for the action complained of.' " Santos v. Schroeder, No. 9:19-CV-1610 (LEK/TWD), 2021 WL 931959, at *5 (N.D.N.Y. Feb. 1, 2021), report and recommendation adopted, 2021 WL 930709 (N.D.N.Y. Mar. 11, 2021) (quoting Ross, 578 U.S. at 642) (quotations and internal citations omitted).

There are "three circumstances where administrative remedies may be unavailable to a prisoner." Wilson v. Snyder, No. 9:19-CV-420 (DNH/CFH), 2019 WL 8192227, at *4 (N.D.N.Y. Dec. 5, 2019), report and recommendation adopted, 2020 WL 1140666 (N.D.N.Y. Mar. 9, 2020). First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." Ross, 578 U.S. at 643 (citing Booth v. Churner, 532 U.S. 731, 736 (2001)). "Next, an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use." Id. Lastly, administrative remedies are unavailable where "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." Id. at 644.

## III. Arguments

### A. Defendants' Arguments

Defendants contend that plaintiff's complaint should be dismissed in its entirety for failure to exhaust administrative remedies because he did not file a grievance, despite the availability of the grievance procedure. See Dkt. No. 26-1.

Defendants submit declarations from the Inmate Grievance Program ("IGP") supervisors at Watertown, Downstate, Fishkill, and Upstate, who all contend that plaintiff did not file any grievances or submit any written requests for an extension of time to file a grievance concerning the alleged January 31, 2019, incident. See Dkt. No. 26-4 at 4, ¶ 14; Dkt. No. 26-6 at 3, ¶¶12-13; Dkt.

Case 9:23-cv-01142-LEK-TWD    Document 35    Filed 02/13/25    Page 39 of 54

Tillman v. Phillips, Not Reported in Fed. Supp. (2021)
2021 WL 5233308

No. 26-7 at 3, ¶¶12-13; Dkt. No. 26-8 at 3, ¶¶12-13; Dkt. No. 26-9 at 5, ¶¶19-20. Johnson, the IGP Supervisor at Watertown, declares that the grievance office never received any letters from plaintiff related to the alleged assault. See Dkt. No. 26-9 at 5, ¶ 23. A search of the Central Office Review Committee ("CORC") records revealed no appeals related to the January 31, 2019, incident. See Dkt. No. 26-5 at 4.

### B. Plaintiff's Arguments

**\*5** In response to defendants' motion for summary judgment, plaintiff states, "I admit that I have exhausted my remedies as far as the process goes." Dkt. No. 28 at 1. Plaintiff does not contend that he filed a request for an extension of time to file a grievance at Watertown. See generally Compl.; Dkt. No. 28. Plaintiff testified that he appealed to the CORC "[a]bout the grievance that [he] filed in February pertaining to the incident that happened in Watertown" and was "still waiting right now for a response to that." Dkt. No. 26-2 at 95, 99. However, plaintiff does not allege in his complaint or response that he filed an appeal, nor provide any details as to how, when, or at what facility he wrote to the CORC. See generally Compl.; Dkt. No. 28. Rather, plaintiff explains why he was unable to use the grievance process. See Dkt. 1-1 at 3-4; Dkt. No. 28 at 1-2. Plaintiff contends that: (1) he was prohibited from having any writing utensils while under the twenty-one day contraband watch at Watertown; (2) the day he was released from contraband watch, he submitted a grievance, but the officer he gave it to did not file it; (3) he was not permitted access to "writing utensils" while in transit from Watertown to Upstate because "no one is allowed access to the grievance program during transit to S.H.U."; and (4) he wrote "To: Grievance" at Upstate inquiring about the lack of response from Watertown immediately upon his arrival at Upstate. Dkt. No. 28 at 1-2; Dkt. No. 1-1 at 4. Therefore, it appears that plaintiff's current argument is that administrative remedies were unavailable.

### IV. Discussion

### A. Availability of Administrative Remedies

Whether a plaintiff exhausted his administrative remedies is a legal question that requires a defendant to produce reliable evidence of availability. See Coleman v. Nolan, No. 9:15-CV-40 (ATB), 2018 WL 4732778, at *4 (N.D.N.Y. Oct. 2, 2018). "[O]nce a defendant has produced reliable evidence that such remedies were generally available, and the plaintiff nevertheless failed to exhaust those remedies, the plaintiff must then counter the defendant's proof by showing that, as to him or her, the remedy was unavailable." Id. (citing Smith v. Kelly, 985 F. Supp. 2d 275, 284 (N.D.N.Y. 2013)). As such, " 'the burden of production' may shift to a plaintiff when a court considers whether the grievance process was unavailable[.]" Id. (citations omitted).

Williams v. Correction Officer Priatno provides that administrative remedies are unavailable to a plaintiff where a grievance is "unfiled and unanswered" because "the process to appeal ... is prohibitively opaque, such that no inmate could actually make use of it." 829 F.3d 118, 126 (2d Cir. 2016). In Williams, the plaintiff was housed in the SHU and "gave [his] grievance to a correction officer to forward to the grievance office on his behalf, in accordance with DOCCS grievance procedures that apply to inmates in the SHU." [9] Id. at 120-21. The Court found that "in giving his grievance to the correction officer, Williams exhausted all administrative remedies that were available to him." Id. at 126. "That Williams was decided on a motion to dismiss and not on a summary judgment motion does not change the analysis." Medina v. Napoli, 725 F. App'x 51, 54 (2d Cir. 2018) (summary order) (reversing grant of summary judgment and remanding to the district court to apply Williams).

[9]    7 N.Y.C.R.R. 701.7(b) requires that SHU inmates "use centrally located IGP deposit boxes to send grievance forms" and that IGP staff shall collect the contents from these boxes "at least two times per week." 7 N.Y.C.R.R. 701.7(c)(1) further requires that "[a]n IGRC staff member (sergeant, officer) or grievance supervisor shall make rounds of all special housing areas at a reasonable time at least once a week to allow inmates direct access to the program." Plaintiff testified

Tillman v. Phillips, Not Reported in Fed. Supp. (2021)

Case 9:23-cv-01142-LEK-TWD    Document 35    Filed 02/13/25    Page 40 of 54

2021 WL 5233308

that because he was locked in his cell, an officer collected his grievance and placed it in the necessary box. See Dkt. No. 26-2 at 91; see also Rodriguez v. Cross, No. 9:15-CV-1079 (GTS/CFH), 2017 WL 2791063, at *7 (N.D.N.Y. May 9, 2017), report and recommendation adopted, 2017 WL 2790530 (N.D.N.Y. June 27, 2017) (acknowledging that inmates in the SHU are in a different position than other inmates regarding availability of administrative remedies).

In Williams, "[t]he plaintiff supported [his] allegation [of unavailability] by providing the court with the date he filed the grievance, the procedure for how he filed it, and the timeline for roughly when [ ] subsequent follow-up conversations occurred." Ozzborn v. Cornell, No. 9:17-CV-1039 (MAD/ATB), 2021 WL 2227829, at *4 (N.D.N.Y. June 2, 2021) (citing Williams, 829 F.3d at 121). In applying Williams, this Court has held that it is sufficient for a plaintiff to "submit[ ] a sworn statement that he gave his grievance to a correction officer," and the plaintiff is "not then required to produce a greater amount of evidence than normally required of a non-movant at the summary judgment stage." Hudson v. Kirkey, No. 9:20-CV-0581 (LEK/DJS), 2021 WL 1966721, at *4 (N.D.N.Y. May 17, 2021) (citing McLean v. LaClair, No. 9:19-CV-1227, (LEK/ATB) 2021 WL 671650, at *8 (N.D.N.Y. Feb. 22, 2021)).

 **\*6** This Court has also denied summary judgment where a plaintiff "does not have a copy of the grievance, was not confined in the SHU, and has not submitted any contemporaneous correspondence inquiring about the status of his grievance," but submitted a sworn response and testified under oath that he submitted a handwritten grievance and that he verbally followed up with the grievance office. Maldonado v. Mandalaywala, No. 9:17-CV-1303 (BKS/TWD), 2020 WL 1159426, at *17 (N.D.N.Y. Feb. 12, 2020), report and recommendation adopted, 2020 WL 1157643 (N.D.N.Y. Mar. 10, 2020); see also Martinaj v. Uhler, No. 9:18-CV-00257 (BKS/DJS), 2021 WL 3793769, at *12 (N.D.N.Y. Aug. 26, 2021) (denying summary judgment where the plaintiff wrote a follow-up letter inquiring about his grievance and submitted a copy of the letter to the Court, corroborating his sworn declaration).

Further, this Court has denied summary judgment where the plaintiff testified that he wrote two grievances, handed one to a grievance officer while housed in the general population, and another to a prison guard while housed in the SHU, but "he made no attempt to follow up or otherwise appeal to the superintendent." Britt v. Carberry, No. 9:17-CV-0234 (MAD/DEP), 2019 WL 3365766, at *10 (N.D.N.Y. Mar. 22, 2019), report and recommendation adopted, 2019 WL 2437912 (N.D.N.Y. June 11, 2019); see also Braxton v. Bruen, No. 9:17-CV-1346 (BKS/ML), 2020 WL 5752333, at *7 (N.D.N.Y. Aug. 24, 2020), report and recommendation adopted, 2020 WL 5751172 (N.D.N.Y. Sept. 25, 2020) (denying summary judgment where the plaintiff "provided extensive deposition testimony regarding his efforts to file grievances and appeals and proffered copies of his grievances, appeals, and letters.").

By contrast, this Court has granted a defendant's motion for summary judgment where the plaintiff testified during a "deposition that he filed a grievance by leaving a plain envelope addressed to the grievance committee for the mail personnel to collect," but did not submit documentary evidence to support the contention and did not verbally follow up with anyone at the prison about the grievance. Ozzborn, 2021 WL 2227829, at *4-5. In addition, this Court has found a plaintiff's exhaustion claim insufficient where the plaintiff "provided no evidence that he actually did write grievances; when they were written; the content of the grievances ... the officers named in the grievance(s) ...; the specific steps taken by Plaintiff to provide them to an officer to send to the grievance office; and any specific follow up with the grievance office[.]" Sankara v. Montgomery, No. 9:16-CV-00885 (FJS/TWD), 2018 WL 4610686, at *8 (N.D.N.Y. June 25, 2018), report and recommendation adopted, 2018 WL 3408135 (N.D.N.Y. July 13, 2018). This Court has noted that "[i]nmates not housed in the SHU are in a different position to SHU inmates when determining if grievance procedures are 'essentially unknowable' or unavailable." Rodriguez v. Cross, No. 9:15-CV-1079 (GTS/CFH), 2017 WL 2791063, at *7 (N.D.N.Y. May 9, 2017), report and recommendation adopted, 2017 WL 2790530 (N.D.N.Y. June 27, 2017) (citation omitted) (granting summary judgment to a plaintiff housed in the general population who did not follow up on his grievance and filed a different grievance at the facility a week later); see also Coleman, 2018 WL 4732778, at *12 ("[A]n inmate depends on correction officers to forward a grievance" while housed in the SHU).

In determining the availability of administrative remedies, courts have also looked to whether and when a plaintiff was transferred from the correctional facility where the grievance at issue was allegedly unfiled. In Williams, the plaintiff was transferred two weeks after attempting to file his grievance. See 829 F.3d at 121. The Second Circuit explained that such a

2021 WL 5233308

transfer compounded the issue of availability where "[t]he regulations plainly do not provide guidance on how a transferred inmate can appeal his grievance with the original facility without having received a response." Id. at 126; compare Ozzborn, 2021 WL 2227829, at *4-5 (explaining that the plaintiff was transferred eight months after attempting to file his grievance and that during those eight months, he did "not assert that he ever followed up on his grievance or offer any explanation as to why he failed to.").

## B. Availability as to Plaintiff

**\*7** Here, plaintiff has produced sufficient evidence to raise a question of fact as to whether administrative remedies were available to him. As plaintiff was housed in the SHU at all relevant times, he had to rely on corrections officers to submit his grievance. See Dkt. No. 1-1 at 3; see, e.g., Williams, 829 F.3d at 120-21. Plaintiff testified that after being released from contraband watch, he "put [the grievance] in an envelope, [ ] sealed it, addressed it to I.D.R.C., [sic] and being that [he was] locked in [his] cell, they have to collect [the] mail and put in in a box." Dkt. No. 26-2 at 91; compare Sankara, 2018 WL 4610686, at *8 (finding that the plaintiff provided no specifics related to his grievance). Plaintiff further testified that a few days after attempting to file his grievance, he asked nonparty C.O. Richardson what was going to happen with his grievance, and C.O. Richardson responded, "it's not going to make it." Id. at 92-93; see Maldonado, 2020 WL 1159426, at *17 (finding an issue of fact as to availability where the plaintiff testified that he "verbally followed up with the Upstate grievance office" but provided no documentary evidence of the conversation). Although plaintiff did not testify about who he handed his grievance to, he explained the procedure he followed, and roughly set forth the timeline for when he filed the grievance and held a follow-up conversation, which creates a genuine issue of material fact as to the availability of administrative remedies. See Ozzborn, 2021 WL 2227829, at *4 (citing Williams, 829 F.3d at 121).

Moreover, plaintiff transferred facilities three weeks after attempting to file a grievance and follow up on its status, contributing to the potential unavailability as "[t]he regulations plainly do not provide guidance on how a transferred inmate can appeal his grievance with the original facility without having received a response." Williams, 829 F.3d 118 at 126; Ozzborn, 2021 WL 22272829, at *4

Plaintiff testified that after arriving at Upstate, he wrote a letter to Upstate seeking a response to the grievance he filed at Watertown. See Dkt. No. 26-2 at 90. Plaintiff has supported this testimony by submitting a sworn response and a copy of the letter he wrote to Upstate. See Dkt. No. 28; Dkt. No. 1-1 at 4; see Martinaj, 2021 WL 3793769, at *12 (finding that the plaintiff's "sworn declaration, which is corroborated by his follow-up letter to the IGP Supervisor at Upstate, raises a material issue of fact as to whether he submitted a grievance while confined at Upstate."). Considering this Court's responsibility to draw reasonable inferences in plaintiff's favor, along with plaintiff's deposition testimony, sworn response, and corroborating document—the letter written to Upstate—plaintiff has raised a genuine issue of material fact as to the availability of administrative remedies. See, e.g., Hudson, 2021 WL 1966721, at *4.

## C. Plaintiff's Access to Writing Materials and Timing of Filing

In reply, defendants argue that plaintiff's unavailability argument should be disregarded because plaintiff's deposition testimony contradicts his response. See Dkt. No. 29 at 5-6. Specifically, defendants argue that plaintiff never testified about lacking access to writing utensils. See id. at 6. Further, defendants contend that "plaintiff testified that he filed a grievance on February 19, 2019," but because he was on contraband watch until February 21, 2019, he would have been unable to write the grievance on February 19 if he were denied writing materials. Id. (citing Dkt. No. 26-2 at 86-88; [10] Dkt. No. 1-1 at 4). IGP Supervisor Johnson declares that an inmate housed in the SHU at Watertown "ha[s] access to grievance forms, paper, and writing utensils." Dkt. No. 26-9 at 3, ¶ 9. Further, the IGP Supervisors for Fishkill and Downstate declare that "[p]laintiff had full access to the [ ] grievance office ... during the time that he was incarcerated[.]" Dkt. No. 26-7 at 3, ¶ 10; Dkt. No. 26-8 at 3, ¶ 10. Citing Louis-Charles v. Barker, defendants also argue that plaintiff had forty-two days between the January 31, 2019, incident and his March

Tillman v. Phillips, Not Reported in Fed. Supp. (2021)
Case 9:23-cv-01142-LEK-TWD    Document 35    Filed 02/13/25    Page 42 of 54
2021 WL 5233308

14, 2019, transfer to file a grievance, an extension request, or write to Watertown, and "any argument of unavailability due to transfer should be disregarded as without merit." Dkt. No. 29 at 8; see No. 9:16-cv-1417 (MAD/CFH), 2018 WL 4299982, a *2 (N.D.N.Y. Sept. 10, 2018).

10    Plaintiff did not testify that he filed a grievance on February 19, 2019, in the portion of the deposition transcript that defendants cite. See Dkt. No. 26-2 at 86-88. Defendants' counsel asked plaintiff if he "had sent a grievance on February 19th, 2019[,]" to which plaintiff initially responded, "Yes." Id. at 89. Plaintiff later clarified, "[s]o, when I got off of watch and on the 21st of February '19, I wrote the letter and sent it out the next day." Id.

**\*8** To the extent defendants argue that plaintiff could have filed his grievance or a request for an extension after being released from contraband watch and prior to his transfer, Williams squarely addressed this issue. The Court explained,

> the window to request an extension between 21 and 45 days of the incident will occur only where the inmate took less than the allowed 21 days to submit his original complaint. If the inmate took full advantage of the time the regulations give him to act and then had to wait 25 days for a response, 46 days will have passed before he learns with certainty that the superintendent failed to respond.

Williams, 829 F.3d at 125. As noted, plaintiff was under contraband watch for twenty-one days. See Dkt. No. 28 at 1. [11] Assuming for the sake of argument that plaintiff wrote his grievance the same day he was taken off of contraband watch, i.e., at the end of the twenty-first day, and waited twenty-five days for the Superintendent's response, [12] he would have missed the window to seek an extension. See Williams, 829 F.3d at 125; see also 7 N.Y.C.R.R. §§ 701.5(a)(1), 701.8(g). Further, even where 7 N.Y.C.R.R. § 701.8(g) allows for an inmate to appeal if "the superintendent fails to respond within the required 25 calendar day time limit[,]" this assumes that the grievance was filed. Williams, 829 F.3d at 124 ("[I]f the grievance had never been filed, the superintendent would never have received it and the timeline for [the superintendent] to provide a response ... would never have been triggered.... In turn, the textual provision allowing a grievant to appeal to the CORC would never have come into effect.") (citing 7 N.Y.C.R.R. § 701.8(f), (g)). Therefore, because the regulations do not provide "a mechanism for appealing a grievance that was never filed," plaintiff could not have "actually ma[d]e use of" the grievance process. Id. at 126.

11    Defendants do not address the length of plaintiff's contraband watch. Rather, they state that he was placed on contraband watch on January 31, 2019, and reference the twenty-one days only when reiterating plaintiff's contentions. See Dkt. No. 29 at 5, n.1, 7.

12    "Grievances claiming employee harassment, including claims of excessive force, are of particular concern to the administration of [DOCCS] facilities, and subject to an expedited procedure whereby the grievance goes directly to the facility superintendent." Miller v. Ott, No. 9:20-CV-00666 (DNH/CFH), 2021 WL 3812621, at *4 (N.D.N.Y. Aug. 5, 2021), report and recommendation adopted, 2021 WL 3793051 (N.D.N.Y. Aug. 26, 2021) (quotation marks and citations omitted). "Within 25 calendar days of receipt of the grievance, the superintendent will render a decision on the grievance and transmit said decision, with reasons stated to the grievant[.]" 7 N.Y.C.R.R. § 701.8(f)

As to the availability of writing materials while plaintiff was on contraband watch and during his transfers, "[w]hen a plaintiff[ ] asserts that a defendant[ ] withheld pens, courts have granted summary judgment against a plaintiff when the record does not show that [p]laintiff indicated to prison officials that he needed a pen [to] file a grievance or that prison officials refused to provide [one] for this purpose." Rodriguez, 2017 WL 2791063, at *5 (citation and internal quotation marks omitted). Courts also examine "whether the inmate was drafting other documents during the same time period, or whether they were able to access materials from other sources." Id. Here, plaintiff does not explain whether, when, or from whom he requested writing materials. See generally Dkt. No. 28. Instead, plaintiff summarily states that, while on contraband watch, he "was prohibited from obtaining any kind of clothes, mat[t]resss, or writing uten[s]ils" and during transport, he was "not permitted any kind of

Tillman v. Phillips, Not Reported in Fed. Supp. (2021)

Case 9:23-cv-01142-LEK-TWD   Document 35   Filed 02/13/25   Page 43 of 54

2021 WL 5233308

writing utensils." Dkt. No. 28 at 1-2. However, the record does not show that plaintiff filed any grievances, wrote any letters, or had access to writing materials from another source while under contraband watch or during his transport to other facilities. C.f. Rodriguez, 2017 WL 2791063, at *5 (granting summary judgment where the plaintiff filed numerous other grievances in the same year and only asserted a denial of paper and pen on one occasion); Mena v. City of New York, No. 12-CV-6838 (GBD/AJP), 2013 WL 1352081, at *8 (S.D.N.Y. Apr. 4, 2013), report and recommendation adopted, 2013 WL 3580057 (S.D.N.Y. July 10, 2013) (finding the plaintiff's contention that the defendants "totally deprived [him] of a writing implement[,]" "implausible[,]" because he wrote other documents and grievances during the relevant time period).

 **9**  Additionally, defendants' reliance on Louis-Charles is misplaced. There, the plaintiff claimed that he was denied access to writing materials but submitted a written grievance and drafted letters during the same time frame. See Louis-Charles, 2018 WL 4299982, at *2. As such, the Court "found Plaintiff's allegation did not establish a genuine dispute of material fact because the testimony was both internally inconsistent and not supported by any evidence." Id. The plaintiff also did not reach out to shift supervisors to inquire about his grievance. See id. The Court found that "[p]laintiff's decision to abandon alternative available avenues for relief was not the result of Defendants thwarting his access to the grievance process[.]" Id. Conversely, here, plaintiff contacted a corrections officer to inquire about his grievance and later wrote to Upstate asking about the status of the grievance. See Dkt. No. 26-2 at 92; Dkt. No. 1-1 at 4.

As to internal inconsistencies, the precise date plaintiff allegedly attempted to file his grievance is unclear. In the letter plaintiff wrote to Upstate, he explained that he wrote his Watertown grievance "on approximately 2/19/19[.]" Dkt. No. 1-1 at 4. In his deposition, plaintiff testified, "I filed it February 22nd.... So, when I got off of watch and on the 21st of February '19, I wrote the letter and sent it out the next day." Dkt. No. 26-2 at 89. In his response, plaintiff wrote that "[f]rom 2/21/19 [to] 3/14/19, I did not receive a response to my grievance[,]" implying that he attempted to file it on February 21, 2019, or sooner. Dkt. No. 28 at 2. Finally, in his complaint, plaintiff stated that he was taken off of contraband watch on "2/23/19 ... and [he] immediately filed a grievance[.]" Compl. at 2. Therefore, even though plaintiff is inconsistent with the date he was released from contraband watch, plaintiff's contention that he wrote the grievance immediately after being released is not. See Compl. at 2; Dkt. No. 26-2 at 89.

Where a defendant correctly notes that a plaintiff's versions of events are not completely consistent, "this Court, at the summary judgment stage, will not weigh in on the factual dispute or make credibility determinations regarding Plaintiff's sometimes conflicting testimony." Thompson v. Booth, No. 16-CV-03477 (PMH), 2021 WL 918708, at *9 (S.D.N.Y. Mar. 10, 2021). Therefore, as "the exhaustion determination hinges on the question of plaintiff's credibility ... summary judgment is not warranted on the issue of exhaustion." Bishop v. Presser, No. 9:16-CV-1329 (MAD/ATB), 2018 WL 7917915, at *5 (N.D.N.Y. Dec. 28, 2018), report and recommendation adopted, 2019 WL 442154 (N.D.N.Y. Feb. 5, 2019) (finding that the exhaustion issue hinged on the plaintiff's credibility where the "plaintiff [ ] consistently alleged that he filed a grievance[,]" [he] "provided documentary evidence to support that claim[,]" he was required to rely on SHU officers, and he was "subsequent[ly] transfer[red] to another facility[.]").

The record, when viewed in the light most favorable to plaintiff, suggests that his grievance may have been unfiled and unanswered. As such, it is recommended that the Court deny defendants' Motion for Summary Judgment and "hold a hearing, at which a fact-finder can assess the credibility of witnesses and the relative weight of the evidence the parties present" to determine whether plaintiff exhausted his administrative remedies or if the administrative remedies were unavailable. Hudson, 2021 WL 1966721, at *4.

### V. Conclusion

**WHEREFORE**, for the reasons set forth above, it is hereby:

**RECOMMENDED**, that defendants' Motion for Summary Judgment (Dkt. No. 26) be **DENIED**; and it is further

Tillman v. Phillips, Not Reported in Fed. Supp. (2021)

2021 WL 5233308

**RECOMMENDED**, that the Court hold an exhaustion hearing; and it is

**ORDERED**, that the Clerk of Court update the docket to reflect the appropriate spelling of defendants' names: Danny Putnam and Jonathan Putnam; and it is further

**\*10  ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order on all parties in accordance with Local Rules.

**IT IS SO ORDERED**.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**. Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993) (citing Small v. Secretary of Health and Human Servs., 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); FED R. CIV. P. 6(a), 6(e), 72. [13]

[13]    If you are proceeding pro se and are served with this Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Report-Recommendation & Order was mailed to you to serve and file objections. See FED. R. CIV. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. See id. § 6(a)(1)(C).

**All Citations**

Not Reported in Fed. Supp., 2021 WL 5233308

---

**End of Document**                                                © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Tillman v. Phillips, Not Reported in Fed. Supp. (2021)

2021 WL 5768393

2021 WL 5768393
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

K'var TILLMAN, Plaintiff,

v.

Trevor PHILLIPS, et al., Defendants.

9:19-CV-1597 (LEK/CFH)
|
Signed 12/06/2021

**Attorneys and Law Firms**

K'var Tillman, Schenectady, NY, Pro Se.

David C. White, Office of Attorney General, Albany, NY, for Defendants Trevor Phillips, Timothy Clark, Michael Clark, J. Sorensen, Danny Putnam, John Putman.

<u>DECISION AND ORDER</u>

Lawrence E. Kahn, United States District Judge

## I. INTRODUCTION

 **\*1**  Plaintiff K'var Tillman brings this pro se action against Sergeant ("Sgt.") Trevor Phillips, Sgt. Timothy Clark, Sgt. Michael Clark, Correction Officer ("C.O.") J. Sorensen, C.O. Danny Putnam, and C.O. John Putman (collectively, "Defendants"). Plaintiff commenced this action on December 23, 2019. Dkt. No. 1 ("Complaint"). On January 2, 2020, the Court ordered administrative closure for failure to properly comply with the Filing Fee Requirement. Dkt. No. 4. On January 10, 2020, Plaintiff filed a motion for leave to proceed in forma pauperis ("IFP") and the case was reopened. Dkt. Nos. 5, 6.

On April 4, 2020, the Court issued a Decision and Order. Dkt. No. 7. In that Decision and Order, the Court granted Plaintiff's motion to proceed IFP, and allowed the following claims to survive sua sponte review: (1) Plaintiff's Eighth Amendment excessive-force and failure-to-intervene claims against D. Putnam, J. Putnam, Sorensen, Phillips, Clark, and Clarke for their January 31, 2019 assault of Plaintiff; and (2) Plaintiff's equal-protection claim against Phillips.

Following discovery, on April 1, 2021, Defendants filed a motion for summary judgement, Dkt. No. 26 ("Motion"), arguing that Plaintiff had failed to exhaust administrative remedies as required by law. Dkt. No. 26-1. at 2. On November 10, 2021, Magistrate Judge Christian Hummel recommended that summary judgement be denied and an exhaustion hearing be scheduled. Dkt. No. 33 ("Report-Recommendation") at 2. No objections to the Report-Recommendation have been filed in this case. See Docket.

For the reasons discussed below, the Court adopts the Report-Recommendation in its entirety.

## II. BACKGROUND

Plaintiff's factual allegations are detailed in Judge Hummel's Report-Recommendation, familiarity with which is assumed. See R. & R. at 2–4.

## III. LEGAL STANDARD

2021 WL 5768393

Within fourteen days after a party has been served with a copy of a magistrate judge's report-recommendation, the party "may serve and file specific, written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b); see also L.R. 72.1(c). A court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). However, if no objections are made, or if an objection is general, conclusory, perfunctory, or a mere reiteration of an argument made to the magistrate judge, a district court need review that aspect of a report-recommendation only for clear error. See Barnes v. Prack, No. 11-CV-857, 2013 WL 1121353, at *1 (N.D.N.Y. Mar. 18, 2013); see also Demuth v. Cutting, No. 18-CV-789, 2020 WL 950229, at *2 (N.D.N.Y. Feb. 27, 2020) (Kahn, J.). "[I]t is established law that a district judge will not consider new arguments raised in objections to a magistrate judge's report and recommendation that could have been raised before the magistrate but were not." Zhao v. State Univ. of N.Y., 04-CV-0210, 2011 WL 3610717, at *1 (E.D.N.Y. Aug. 15, 2011) (internal quotation marks and citation omitted); see also Hubbard v. Kelley, 752 F. Supp. 2d 311, 312–13 (W.D.N.Y. 2009) ("In this circuit, it is established law that a district judge will not consider new arguments raised in objections to a magistrate judge's report and recommendation that could have been raised before the magistrate but were not.") (internal quotation marks omitted). "A [district] judge ... may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." § 636(b).

## IV. DISCUSSION

**\*2** Here, no objections have been raised in the allotted time with respect to Magistrate Judge Hummel's Report-Recommendation. Consequently, the Court reviews the Report-Recommendation for clear error and finds none. Therefore, the Court adopts the Report-Recommendation in its entirety.

## V. CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that the Report-Recommendation (Dkt. No. 33) is **APPROVED and ADOPTED** in its entirety; and it is further

**ORDERED**, that Defendant's Motion for Summary Judgement is **DENIED**; and it is further

**ORDERED**, that the matter is referred to the Magistrate to schedule an exhaustion hearing; and it is further

**ORDERED**, that the Clerk of the Court shall serve a copy of this Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2021 WL 5768393

---

**End of Document**

© 2025 Thomson Reuters. No claim to original U.S. Government Works.

2024 WL 5294279
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Norman CRONEY, Plaintiff,

v.

D. MEDBURY, et al., Defendants.

9:23-CV-1449 (DNH/DJS)
|
Signed November 12, 2024

**Attorneys and Law Firms**

NORMAN CRONEY, Plaintiff, pro se, 16-A-0510, Sing Sing Correctional Facility, 354 Hunter Street, Ossining, New York 10562

ALEXANDRA GALUS, ESQ., HON. LETITIA JAMES, New York State Attorney General, Counsel for Defendants, The Capitol, Albany, New York 12224

## REPORT-RECOMMENDATION and ORDER [1]

[1]  This matter was referred to the undersigned for a report-recommendation pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

DANIEL J. STEWART, United States Magistrate Judge

**\*1**  Plaintiff brings this civil rights action, pursuant to 42 U.S.C. § 1983, alleging that Defendants violated his rights while he was in the custody of the Department of Corrections and Community Supervision ("DOCCS"). Dkt. No. 1, Compl. Specifically, the District Court permitted claims regarding alleged mail tampering and invasion of privacy to proceed against the two named Defendants and two "John Doe" Defendants. Dkt. No. 8 at p. 14. Defendants move for Summary Judgment, pursuant to Federal Rule of Civil Procedure 56(a), seeking to dismiss the Complaint based on Plaintiff's failure to properly exhaust his administrative remedies. Dkt. No. 22. In the alternative, the named Defendants also seek dismissal under Federal Rule of Civil Procedure 12(b)(6) based on a lack of personal involvement. *Id.* Plaintiff opposes the Motion, Dkt. No. 25, Pl.'s Opp., and Defendants have filed a reply. Dkt. No. 26. Defendants have not yet answered the Complaint and no discovery has taken place.

For the reasons that follow, the Court recommends that the Motions be **DENIED**.

## I. BACKGROUND

The allegations in the Complaint relate to alleged tampering with Plaintiff's legal mail while he was housed at Marcy Correctional Facility. *See generally* Compl. Plaintiff alleges that on August 10, 2023, an unidentified correctional employee [2] arrived at Plaintiff's cell to give him legal mail. Plaintiff claims that a copy of a large manila envelope was provided to him with his legal mail, but that the actual envelope was discarded and destroyed by the Doe Defendant. Compl. at p. 4. The Complaint goes on to allege that upon inspecting the contents provided to him, all the documents indicated in the cover letter were not present. *Id.* Plaintiff alleges that his mail was tampered with and that he filed a grievance asserting this fact. *Id.;* Pl.'s Opp. at

p. 7. The Complaint also alleges that Plaintiff spoke with the Deputy Superintendent about the incident and that the Deputy Superintendent later explained to Plaintiff via letter that certain facility mail policies were the basis of the large manila envelope being confiscated. Compl. at p. 4; Pl.'s Opp. at p. 6. DOCCS has no record of a grievance being filed regarding this incident. Dkt. No. 22-5, Pfendler Decl., ¶ 22.

2       This individual is sued here as John/Jane Doe.

Plaintiff alleges a similar incident occurred on October 19 [th], when the law library officer gave Plaintiff legal mail, again destroying the large envelope, and Plaintiff again finding the mail to be missing items he claims should have been there. Compl. at p. 4. He claims that both incidents were the result of a facility mail directive put in place by the named Defendants. *Id.* Plaintiff specifically alleges that the policy enabled other correctional staff to tamper with inmate mail. *Id.* at p. 5. While Plaintiff again alleges that he filed a grievance regarding the October incident, *id.;* Pl.'s Opp. at p. 10, Defendants maintain there is no record of any grievance regarding this matter. Pfendler Decl. at ¶ 22.

## II. LEGAL STANDARDS

### A. Summary Judgment

 **\*2**  Pursuant to Federal Rule of Civil Procedure 56(a), summary judgment is appropriate only where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party bears the burden to demonstrate through "pleadings, depositions, answers to interrogatories, and admissions on file, together with [ ] affidavits, if any," that there is no genuine issue of material fact. *F.D.I.C. v. Giammettei*, 34 F.3d 51, 54 (2d Cir. 1994) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

To defeat a motion for summary judgment, the non-movant must set out specific facts showing that there is a genuine issue for trial, and cannot rest merely on allegations or denials of the facts submitted by the movant. FED. R. CIV. P. 56(c); *see also Scott v. Coughlin*, 344 F.3d 282, 287 (2d Cir. 2003) ("Conclusory allegations or denials are ordinarily not sufficient to defeat a motion for summary judgment when the moving party has set out a documentary case."); *Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 525-26 (2d Cir. 1994). To that end, sworn statements are "more than mere conclusory allegations subject to disregard ... they are specific and detailed allegations of fact, made under penalty of perjury, and should be treated as evidence in deciding a summary judgment motion" and the credibility of such statements is better left to a trier of fact. *Scott v. Coughlin*, 344 F.3d at 289 (citing *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983) and *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995)).

When considering a motion for summary judgment, the court must resolve all ambiguities and draw all reasonable inferences in favor of the non-movant. *Nora Beverages, Inc. v. Perrier Grp. of Am., Inc.*, 164 F.3d 736, 742 (2d Cir. 1998). "[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994). Furthermore, where a party is proceeding *pro se*, the court must "read [his or her] supporting papers liberally, and ... interpret them to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994), *accord, Soto v. Walker*, 44 F.3d 169, 173 (2d Cir. 1995). Nonetheless, summary judgment is appropriate "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### B. Motion to Dismiss

On a motion to dismiss, the allegations of the complaint must be accepted as true. *See Cruz v. Beto*, 405 U.S. 319, 322 (1972). The trial court's function "is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *Geisler v. Petrocelli*, 616 F.2d 636, 639 (2d Cir. 1980). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974) (*overruled on other grounds by Davis v. Scherer*, 468 U.S. 183 (1984)).

The Court is bound to give the plaintiff the benefit of every reasonable inference to be drawn from the "well-pleaded" allegations of the complaint. *See Retail Clerks Int'l Ass'n, Local 1625, AFL-CIO v. Schermerhorn*, 373 U.S. 746, 754 (1963). Nevertheless, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Therefore, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citation omitted). A motion to dismiss pursuant to Rule 12(b)(6) may not be granted so long as the Plaintiff's complaint includes "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. at 697.

**\*3** "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. at 678. This plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* In this respect, to survive dismissal, a plaintiff "must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.' " *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 440 U.S. at 555). Thus, in spite of the deference the court is bound to give to Plaintiff's allegations, it is not proper for the court to assume that "the [plaintiff] can prove facts [which he or she] has not alleged or that the defendants have violated the ... laws in ways that have not been alleged." *Assoc. Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983). The process of determining whether a plaintiff has "nudged [his] claims ... across the line from conceivable to plausible," entails a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. at 679-80.

Where, as here, the complaint was *filed pro se*, it must be construed liberally with "special solicitude" and interpreted to raise the strongest claims that it suggests. *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011). Nonetheless, *a pro se* complaint must state a plausible claim for relief. *See Harris v. Mills*, 572 F.3d 66, 73 (2d Cir. 2009).

## III. DISCUSSION

### A. Exhaustion of Administrative Remedies

#### 1. Exhaustion Procedure

The Prison Litigation Reform Act ("PLRA") provides, in pertinent part, that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The Supreme Court has held that "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002) (citation omitted). Exhaustion in prisoner cases covered by § 1997e(a) is mandatory. *Id.* at 524; *see also Ross v. Blake*, 578 U.S. 632, 638 (2016) (stating that the mandatory language of § 1997e(a) forecloses judicial discretion to craft exceptions to the requirement). Furthermore, § 1997e(a) requires "proper exhaustion," which means using all steps of the administrative process and complying with "deadlines and other critical procedural rules." *Woodford v. Ngo*, 548 U.S. 81, 93 (2006). The defendant bears the burden of proving that the administrative remedies available to the plaintiff were not exhausted prior to the initiation of a civil action. *Howard v. Goord*, 1999 WL 1288679, at \*3 (E.D.N.Y. Dec. 28, 1999).

In New York, the administrative remedies consist of a three-step Incarcerated Grievance Program ("IGP"). First, a grievance is submitted to the Incarcerated Grievance Resolution Committee ("IGRC"), a committee comprised of both inmates and facility employees. N.Y. COMP. CODES R. & REGS. tit. 7, § 701.5(b). An inmate must submit a grievance "within 21 calendar days of an alleged occurrence." *Id.* at § 701.5(a)(1). An inmate may request an extension of the time limit within forty-five days of the date of the alleged occurrence. *Id.* at § 701.6(g). The IGRC reviews and investigates the formal complaint and then issues a written determination. *Id.* at § 701.5(b). Second, upon appeal of the IGRC decision, the superintendent of the facility reviews the IGRC's determination and issues a decision. *Id.* at § 701.5(c). Finally, upon appeal of the superintendent's decision, the Central Office Review Committee ("CORC") makes the final administrative determination. *Id.* at § 701.5(d). Only upon exhaustion of all three levels of review may a prisoner seek relief in federal court. *Bridgeforth v. Bartlett*, 686 F. Supp. 2d 238, 239 (W.D.N.Y. 2010) (citing, *inter alia, Porter v. Nussle*, 534 U.S. at 524); *see also Neal v. Goord*, 267 F.3d 116, 121 (2d Cir. 2001), *overruled on other grounds by Porter v. Nussle*, 534 U.S. 516.

### *2. The Record Regarding Exhaustion*

**\*4** While DOCCS' departmental records show no indication that Plaintiff filed a grievance regarding the alleged mail tampering, Pfendler Decl. at ¶ 22, he has offered what he purports to be the grievances he filed in opposition to the Motion. Pl.'s Opp. at pp. 7 & 10. He also offers additional correspondence he maintains was submitted to grievance officials at the facility inquiring about the status of the grievances and asking, based on the purported lack of a response, that the grievances be moved to the next step in the administrative process. *Id.* at pp. 8-9 & 11-12. These documents do not establish that they were in fact filed with correctional staff, but they are sufficient at the very least to raise a question of fact about whether Plaintiff sought to and was in some way prevented from utilizing the grievance process. This case is different in that regard from others where a plaintiff made a purely conclusory allegation that he had filed grievances, with no documentary proof. *See, e.g., Gough v. Morris*, 2018 WL 7199494, at *4 (N.D.N.Y. Dec. 14, 2018), *report and recommendation adopted*, 2019 WL 416150 (N.D.N.Y. Feb. 1, 2019) (recommending that summary judgment be granted when plaintiff's opposition failed to "provide copies of the any alleged grievances regarding this incident."); *see also Gibbs v. Gadway*, 2019 WL 5191506, at *3 (N.D.N.Y. Oct. 15, 2019), *report and recommendation adopted*, 2020 WL 1227156 (N.D.N.Y. Mar. 13, 2020).

This together with Plaintiff's specific allegations that grievances were not properly processed at Marcy Correctional Facility, Pl.'s Opp. at p. 14, create a question of fact sufficient to defeat summary judgment at this stage of the litigation. While the Court has the ability to order an exhaustion hearing, *see Messa v. Goord*, 652 F.3d 305, 309 (2d Cir. 2011), doing so here without the benefit of discovery would not be the most efficient manner in which to resolve the factual disputes presented here. "Only in the rarest of cases may summary judgment be granted against a plaintiff who has not been afforded the opportunity to conduct discovery." *Hellstrom v. U.S. Dep't of Veterans Affairs*, 201 F.3d 94, 97 (2d Cir. 2000); *see also Roebuck v. Hudson Valley Farms, Inc.*, 208 F.R.D. 34, 36 (N.D.N.Y. 2002) (finding summary judgment premature where plaintiff had not yet been afforded opportunity to conduct relevant discovery). Rather, the Court recommends that the Motion for Summary Judgment be denied as premature.

### B. Personal Involvement

Defendants alternatively seek dismissal, under FED. R. CIV. P. 12, based on the lack of personal involvement in the actual incidents Plaintiff contends constituted tampering with his mail. Defs.' Mem. of Law at pp. 12-14.

In the Second Circuit, "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991)). Several behaviors may indicate the "personal involvement" of prison workers or supervisors in depriving an incarcerated individual of their constitutional rights. *Williams v. Smith*, 781 F.2d 319, 323 (2d Cir. 1986). For instance, a

defendant may be personally liable for violating an incarcerated individual's constitutional rights if they "directly participated in the infraction." *Id.* Separately, a "supervisory official may be liable because he or she created a policy or custom under which unconstitutional practices occurred, or allowed such a policy or custom to continue." *Id.* (citing *McCann v. Coughlin*, 698 F.2d 112, 125 (2d Cir. 1983)).

However, the Supreme Court limited supervisory liability, and the Second Circuit clarified that the doctrine of *respondeat superior* does not apply to supervisors in cases involving a subordinate government worker's unconstitutional conduct, and that "there is no special rule of liability for supervisors." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009); *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020) (quoting *Porro v. Barnes*, 624 F.3d 1322, 1328 (10th Cir. 2010)). "[A] plaintiff must plead and prove 'that each Government-official defendant, through the official's own actions, has violated the Constitution.' " *Tangreti v. Bachmann*, 983 F.3d 609, 616 (2d Cir. 2020) (quoting *Ashcroft v. Iqbal*, 556 U.S. at 676).

**\*5** Plaintiff has, however, sufficiently articulated a claim that an institutional policy may have been implemented that interfered with his mail. He specifically alleges that "[d]ue to the Superintendent ... and the Deputy Superintendent ... making a facility rule confiscating envelopes larger than a standard size business envelope, this gave (John/Jane Doe) the opportunity to tamper with my legal mail on August 10[th] . And John Doe the opportunity to tamper as well as seize my legal mail on October 19[th] 2023." Compl. at pp. 4-5. That allegation sufficiently alleges direct personal involvement of each named Defendant in any alleged violation of Plaintiff's rights. Contrary to the arguments made in support of dismissal, Plaintiff's claim is not based on allegedly ignoring complaints he made or because Defendants supervise the individuals who tampered with or confiscated Plaintiff's mail, Defs.' Mem. of Law at pp. 11-13, but that the named Defendants specifically implemented a policy that permitted or facilitated tampering with inmate mail. Nor is the Court persuaded by the argument that Plaintiff has made a purely conclusory allegation connecting that policy to the alleged mail tampering. *Id.* at p. 14. Rather, Plaintiff specifically alleged that the policy provided the John Doe Defendants with the ability to engage in the alleged tampering. Compl. at pp. 4-5. "Legal mail is entitled to a higher degree of protection than regular mail, and prison policies or practices which interfere with legal mail on a regular basis whether incoming or outgoing must be supported by a legitimate penological interest other than mere general security concerns which permit interference with regular mail." *Guillory v. Ellis*, 2014 WL 4365274, at \*13 (N.D.N.Y. Aug. 29, 2014) (internal quotation omitted).

Plaintiff has sufficiently alleged the personal involvement of the Superintendent and Deputy Superintendent regarding the implementation of a mail policy and the Motion to Dismiss, therefore, should be denied.


### IV. CONCLUSION

**WHEREFORE**, it is hereby

**RECOMMENDED**, that the Motions for Summary Judgment and to Dismiss (Dkt. No. 22) be **DENIED**; and it is

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14)[3] days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a).

---

[3]    If you are proceeding *pro se* and are served with this Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the order was mailed to you to serve and file objections.

FED. R. CIV. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. FED. R. CIV. P. 6(a)(1)(C).

**All Citations**

Slip Copy, 2024 WL 5294279

---

**End of Document**

© 2025 Thomson Reuters. No claim to original U.S. Government Works.

2024 WL 4986160
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Norman CRONEY, Plaintiff,

v.

Dannielle MEDBURRY, Michael Deamoru, Jane/John Doe, and John Doe, Defendants.

9:23-CV-1449
|
Signed December 5, 2024

**Attorneys and Law Firms**

NORMAN CRONEY, Plaintiff, Pro Se, 16-A-0510, Sing Sing Correctional Facility, 354 Hunter Street, Ossining, NY 10562.

HON. LETITIA JAMES, New York State Attorney General, ALEXANDRA L. GALUS, ESQ., Ass't Attorney General, Attorneys for Defendants, The Capitol, Albany, NY 12224.

## ORDER ON REPORT & RECOMMENDATION

DAVID N. HURD, United States District Judge

**\*1** On November 17, 2023, *pro se* plaintiff Norman Croney ("plaintiff"), an inmate in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS"), filed this 42 U.S.C. § 1983 action alleging that known and unknown DOCCS officials violated his rights while he was incarcerated at Marcy Correctional Facility. Dkt. No. 1. Along with his complaint, plaintiff moved for leave to proceed *in forma pauperis* ("IFP Application"). Dkt. Nos. 5, 6.

On January 24, 2024, this Court granted plaintiff's IFP Application and, after conducting an initial review of the pleading, determined that plaintiff's First Amendment mail-tampering claims and Fourth Amendment invasion-of-privacy claims survived initial review and required a response from four defendants: Deputy Superintendent Medburry, Superintendent Deamuro, Corrections Officer John/Jane Doe, and Law Library Officer John Doe. Dkt. No. 8.

On May 31, 2024, after counsel entered a notice of appearance, the known defendants; *i.e.*, Medburry and Deamuro, moved for summary judgment or to dismiss plaintiff's claims. Dkt. No. 22. According to them, plaintiff had failed to exhaust his administrative remedies or, alternatively, failed to plausibly allege either defendant's "personal involvement" in the alleged violations. *Id.* Plaintiff opposed, Dkt. No. 25, and defendants replied, Dkt. No. 26.

On November 12, 2024, U.S. Magistrate Judge Daniel J. Stewart advised by Report & Recommendation ("R&R") that defendants' motion should be denied. Dkt. No. 28. As Judge Stewart explained, summary judgment would be premature because plaintiff had offered certain documents that, together with his supporting allegations, tended to suggest that his grievances were not being properly processed at the relevant DOCCS facility. *Id.* Although Judge Stewart recognized that the Court could order an exhaustion hearing on this issue, he concluded that the better course of action would be to permit the parties to take discovery. *Id.*

As to the motion to dismiss, Judge Stewart concluded that plaintiff had sufficiently alleged that defendant Medburry and/or defendant Deamuro were "personally involved" for purposes of § 1983 because, as supervisory officials, they were alleged to have implemented the mail policy that led to the alleged tampering incidents in question. Dkt. no. 28.

Neither party has lodged objections. However, plaintiff has filed a letter motion requesting summary judgment. Dkt. No. 29. A review of plaintiff's letter motion shows that it does not conform in any meaningful respect with either Rule 56 of the Federal Rules of Civil Procedure or with the relevant Local Rules governing summary judgment. But even if this request were otherwise proper, it would be premature for substantially same reasons that Judge Stewart gave in recommending the denial of defendants' motion for summary judgment. So it too will be denied. In sum, upon review for clear error, Judge Stewart's R&R is accepted and will be adopted in all respects. *See* FED. R. CIV. P. 72(b).

**\*2**  Therefore, it is

ORDERED that

1. The Report & Recommendation (Dkt. No. 28) is ACCEPTED;

2. Defendants' motion for partial summary judgment or partial dismissal (Dkt. No. 22) is DENIED;

3. Plaintiff's letter motion (Dkt. No. 29) is DENIED; and

4. Defendants shall file and serve an answer on or before December 19, 2024.

IT IS SO ORDERED.

**All Citations**

Slip Copy, 2024 WL 4986160

---

**End of Document**                                                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

---